## JORGENSEN v. GESSELL PRESSED BRICK CO.

No. 2531. Decided August 8, 1914 (141 Pac. 460).

1. APPEAL AND ERROR—FINDINGS—CONFLICTING EVIDENCE—REVIEW. Findings based on conflicting evidence will not be disturbed on appeal. (Page 35.)

2. SALES—WARRANTY—QUALITY—DESCRIPTION. Where defendant furnished a sample brick to plaintiff, and assured him that brick to be delivered under contract would be first-class, wire-cut, white brick, in quality and color like the sample, such representation was not mere description, but constituted an express warranty. (Page 36.)

3. SALES—SALE BY SAMPLE—WARRANTY. Where a sale of brick was made by a manufacturer according to sample and without any conditions, there was an implied warranty that the brick to be furnished should be like and equal to the sample. (Page 36.)

4. SALES—EXPRESS AND IMPLIED WARRANTY. The existence of an express warranty that brick to be furnished under a contract of sale should be first-class, wire-cut, white brick corresponding to a sample, did not negative an implied warranty that the brick to be furnished should be, in all respects of quality, fitness and color, like the sample.[1] (Page 37.)

5. SALES—BREACH OF WARRANTY—ACCEPTANCE—WAIVER. Plaintiff purchased brick from defendant under a warranty that they should be first-class white brick equal to sample. The brick furnished were of different color, and on being rejected for this reason, defendant's general manager informed plaintiff that the reason the brick were not of the color shown by the sample was because they were wet, but that they would regain their natural white color when dry, whereupon the plaintiff used them, but found that they did not become white after being dry. *Held*, that plaintiff's acceptance of the brick was conditional only, and did not amount to a waiver of the warranty. (Page 38.)

6. SALES—WARRANTY—BREACH—MEASURE OF DAMAGES. In an action for breach of warranty of the quality and color of a certain brick sold to plaintiff for use in a residence, the measure of plaintiff's damage was the loss directly and naturally resulting in the ordinary course of events from the breach. (Page 38.)

[1] *Milling Co.* v. *Supply Co.*, 36 Utah 121; 103 Pac. 242; 140 Am. St. Rep. 815.

Jorgensen v. Gessell Pressed Brick Co., 45 Utah 31.

Appeal from District Court, First District; *Hon. W. W. Maughan,* Judge.

Action by Abraham Jorgensen against the Gessell Pressed Brick Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Nebeker, Thatcher and Bowen* for appellant.

*A. A. Law* and *Walters and Harris* for respondent.

### APPELLANT'S POINTS.

If the parties to a sale have equal opportunity to inspect the property and ascertain its character, kind and quality, no warranty arises from the use of descriptive words or a sample, which will survive acceptance, the natural inference under the circumstances being that the parties relied on their own observation and judgment. (*Barnard* v. *Kellogg,* 10 Wall. 383; *Hyatt* v. *Boyle,* 25 Am. Dec. 276; *Maxwell* v. *Lee,* 34 Minn. 511; 27 N. W. 196; *St. Anthony & D. Elevator Co.* v. *Princeton Roller Mills Co.,* 104 Minn. 401; 116 N. W. 935; *Walcott* v. *Mount,* 38 N. J. L. 496; 20 Am. Rep. 425; *Seixas* v. *Woods,* 2 Am. Dec. 215; *Bowman Lumber Co.* v. *Anderson,* 70 Ohio St. 16; 70 N. E. 503.) It is the duty of the seller to tender an article corresponding with the description in order to cast any duty upon the purchaser to accept it; nevertheless if he tenders an article of a quality inferior to that described, and the purchaser accepts it, he is deemed to have assented that the article corresponds to the description. (*Coply Iron Co.* v. *Pope,* 108 N. Y. 232; 15 N. E. 335; *Pierson* v. *Crooks,* 115 N. Y. 539;—N. E. 349; *Gaudy* v. *Seymour Slack Stave Co.* (Ind. App.), 90 N. E. 915; *Wall Rice Milling Co.* v. *Continental Supply Co.,* 36 Ut. 121; 103 Pac. 242.)

### RESPONDENT'S POINTS.

Where the circumstances and condition of the purchaser have been altered, either by part payment, or as here where

workmen were employed, the building partially constructed, and he unable to find brick of the same character elsewhere, and being assured by the vendor that the defect complained of was only apparent and not real, and was caused by some collateral condition which time would remedy, in such case our contention is that there has been no unqualified acceptance of the property, and the breach of the contract, call it what you will, a condition precedent or a collateral contract of warranty, will survive such an acceptance. (*McCaa* v. *Elam Drug Co.,* 114 Ala. 74; 62 Am. St. Rep. 88; *Wilson* v. *Western Fruit Co.,* 11 Ind. App. 89; *Long* v. *Pruyn,* 128 Mich. 57; 8 Detroit Leg. N. 540; *Carleton* v. *Lombard,* 149 N. Y. 137; *Abe Stein Co.* v. *Robertson,* 38 N. Y. App. Div. 311; *Richardson* v. *Levi,* 69 Hun (N. Y.) 432; *Alpha Mills* v. *Watertown Steam Engine Co.,* 116 N. Car. 797; *Tripis* v. *Gamble* (Tex. Civ. App. 1894), 28 S. W. Rep. 244; *Edwards* v. *Plaquemine Ice, etc., Co.,* 46 La. Ann. 360; *Noble* v. *Buswell,* 96 Me. 73; *Aultman* v. *Hunter,* 82 Mo. App. 632.) ''The rule is, however, subject to certain exceptions, and is more particularly applicable in a case where no part of the purchase price has been paid and the buyer is in a position to reject the goods without *sustaining any loss* other than what might grow out of the difference between the contract and market prices,'' referring to the general rule that an acceptance without objection bars the recovery for defects afterwards discovered, where such defects are patent and visible. (35 Cyc. 618, and cases.) ''On a sale by sample the obligation rests on the seller to deliver goods corresponding to the sample, and if they do not correspond there is a breach of the contract on the part of the seller entitling the buyer to reject the goods and relieving him from liability for the price if he returns them, or entitling him to sue for and recover the difference if he retains them.'' (35 Cyc. 223, 224.) Where goods are sold by sample with a warranty that they shall correspond with the sample the vendee may recover damages for a breach of the warranty, although he has accepted the goods after an opportunity for inspection. (*Zabriskie* v. *Central Vermont R. Co.,* 131 N. Y. 72; 29 N. E.

1006; *Fairbank Canning Co.* v. *Metzger*, 118 N. Y. 260; 23. N. E. 372; 15 Am. St. Rep. 753; *Kent* v. *Friedman*, 101 N. Y. 616; 3 N. E. 905; *Brigg* v. *Hilton*, 99 N. Y. 517; 3 N. E. 51; 52 Am. Rep. 63; *Meagley* v. *Hoyt*, 88 Hun (N. Y.) 328; 34 N. Y. Suppl. 790.)

FRICK, J.

The respondent, Jorgensen, brought this action against the appellant, a corporation, to recover damages for an alleged breach of warranty in the sale of brick. The appellant, in its answer, admitted the sale of a certain kind and quantity of brick, denied the warranty, and counterclaimed to recover for an alleged balance due on the brick sold. A trial to the court without a jury resulted in findings and judgment in favor of respondent, and hence this appeal.

The findings, in substance, are: That in July, 1911, appellant was engaged in the business of manufacturing and selling brick at Logan, Utah; that at said time and place appellant's general manager was informed by respondent, or one of his sons, that respondent intended to build a certain dwelling house, and for that purpose desired to purchase a certain quantity of brick; that the general manager of appellant produced and exhibited to respondent a sample of a certain kind and quality of brick manufactured by appellant, and the court found that "as an inducement to plaintiff (respondent) to purchase the said brick the defendant (appellant) expressly warranted and agreed that it would deliver said quantity of brick to plaintiff, * * * and that the same when delivered would be equal to and correspond with the said sample," and that such brick should be "first-class, wire-cut, white brick"; that in reliance upon said warranty respondent purchased the quantity of brick required for said dwelling at a price agreed upon by the parties; that appellant's general manager was informed and well knew that said brick were purchased and were to be used by respondent to construct a certain dwelling house; that when a portion of said brick had been delivered respondent informed the general manager aforesaid that the same did not conform to the warranty, and that they were not white brick like the

sample referred to, but were of a variety of colors; that appellant's general manager then informed respondent that the reason the brick which had been delivered were not of the color as shown by the sample was because they were wet, and that they would regain their natural white color as shown by the sample when they should become dry after having been in the wall of the house for a sufficient length of time; that respondent had no knowledge or judgment with respect to the matter, and, relying upon the general manager's statements and promises in that regard, the whole number of brick needed for the dwelling were received by respondent and were placed in the walls of said house; that the brick did not regain the white color as represented by the general manager, and "said brick were not as warranted  *  *  *  in this: That a part of said brick were not as hard as said sample, and were of varying shades and colors, to-wit, white, buff, pink, and various shades of salmon color, and the same did not change after becoming dry in said walls of said building  *  *  *  thereby making said building of all shades and colors, giving it an uninviting appearance, and depreciating its market value in the sum of $100." The court also allowed respondent damages at the rate of two dollars per thousand for the quantity of brick warranted as aforesaid, making the whole damages allowed the sum of $132. The appellant was also allowed the amount found unpaid on the contract, $68.45, and respondent was given judgment for the difference, amounting to $63.55.

Appellant's counsel have assigned numerous errors, but in their brief they have reduced them to a few propositions, and we shall consider such only as we deem material.

The findings are assailed upon the ground that the evidence does not sustain the finding that appellant warranted the brick. Upon that question the evidence is in conflict. After examining the record we are convinced that there is sufficient evidence to support the finding, and that it accords with the weight of the evidence upon that subject. This assignment must therefore fail.

It is, however, contended that, conceding the facts as testified to be true, yet they do not constitute a warranty in

law, but amount to no more than words of description; that is, what is found by the court to constitute a warranty was not intended as such, but was merely intended as a description of the kind of brick that were to be delivered by appellant. We cannot yield assent to this contention. Before respondent purchased the brick in question he was furnished a sample brick, and was assured, as the court found, that the brick to be delivered to him were to be "first-class, wire-cut, white brick," and were to be in quality and color like the sample exhibited at the time. It is admitted in the answer "that defendant agreed to sell the plaintiff, and the plaintiff agreed to buy sufficient first-class, wire-cut brick to construct said house." It is also admitted in the answer that samples of brick were furnished by appellant to respondent's son. The principal matter denied by appellant in the answer is that it warranted the brick and that it agreed to furnish all white brick corresponding in color with the sample produced by the respondent in court, and which he testified was the one exhibited by the general manager at the time the brick were purchased. Without setting forth the evidence upon the subject of the warrant, we are satisfied that the representations made by the general manager as testified to by respondent constituted a warranty of the quality and color of the brick. In 5 Elliott on Conts., Section 4999, the author states the law upon what is sufficient to constitute a warranty thus:

"A condition or a warranty may be either express or implied. No particular form of words is required, and the good or bad faith of the seller is usually immaterial. As a general rule it may be said that any affirmation of representation of a material fact by the seller during the negotiations for the sale in regard to the title, quality or fitness of the goods or article sold for a particular purpose, showing an intention to assure the buyer of the truth of such fact, and so received and relied on by the buyer, is an express condition or warranty, as the case may be, provided it is not an expression of mere opinion."

But if it were conceded, which it is not, that there was no express warranty, the result, under the peculiar circumstances of this case, would still have to be the same. The sale of brick was made by sample without any con-

ditions, and thus an implied warranty resulted, which, under the evidence and proof, was just as broad and just as effective as an express warranty.   Both the facts alleged in the complaint and those found are sufficient to sustain both an express warranty and an implied one arising by reason of the sale without conditions by sample.   In , 5 Elliott on Conts., Section 5008, it is said:

"In the case of a contract for a sale by sample there is an implied condition or warranty that the bulk shall correspond with and be equal to the sample."

In 35 Cyc. 405, the law is stated thus: .

"On a sale by sample there is an implied warranty that the bulk of the goods is equal to the sample in kind and quality."

The foregoing statements of the law are, we think, universally conceded to be correct when applied to sales by the manufacturer of the article sold by sample without conditions.   Some courts even go so far as to apply them to dealers, but the weight of authority is to the contrary so far as dealers are concerned, unless there is an express warranty. The distinction between sales by the manufacturer and those made by a dealer arises from the fact that the manufacturer is presumed to possess full knowledge respecting the precise nature and quality of his wares, while the dealer may not do so.

Neither does the express warranty, under the facts and circumstances of this case, necessarily negative the implied one.  Referring again to 5 Elliott on Conts.,      4 Section 5009, the author, in referring to this question, says:

"Nor does an express warranty or provision as to quality or fitness necessarily negative an implied warranty when it appears that it was not intended to do so."

In view that the sale in this case was made by the manufacturer of the article and was made by sample without conditions, the implied warranty in its scope and effect was precisely what respondent contends, and what the court found was the scope of appellant's warranty.   While, no doubt,

the law is to the effect that, as a general rule, an express warranty negatives an implied one as to quality and fitness, yet that question does not arise here for the reason that the express warranty is precisely equal to the one implied by law. We have carefully examined the cases cited by appellant's counsel, and after doing so are convinced that they have no application to the facts of this case. In many of those cases the purchaser reserved the right to inspect before accepting the articles sold, or did unconditionally accept them after inspection, and in all of them the courts held there was no express warranty. The case of *Milling Co.* v. *Supply Co.,* 36 Utah 121; 103 Pac. 242; 140 Am. St. Rep. 815, belongs to the class of cases where the right of inspection before acceptance was reserved, and where upon the exercise of the right the purchaser refused to accept the goods.

The court found that the brick in this case were not unconditionally accepted. This finding, although assailed, is justified by the evidence. Where, therefore, the article is accepted upon condition, as in this case, there ordinarily is no waiver of warranty. (35 Cyc. 433.) In such cases the warranty survives acceptance.

The only other question that requires consideration is the question of damages. We are of the opinion that the trial court applied the correct measure of damages. Referring again to 5 Elliott on Cont., Section 5112, the measure of damages in cases of warranty is stated thus:

"The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty. This is the ordinary rule as to general damages. But there may be a recovery in a proper case for special as well as general damages, and such damages as may fairly be supposed to have been within the contemplation of the parties as a probable result of the breach are included."

See same Volume, Section 5116, 5117, where special illustrations of the rule are given. Under the evidence produced by respondent, the court could well have allowed a greater amount of damages, while under that produced by appellant it could have found no damages whatever. In view of the conflict of the evidence, we can see no good reason for inter-

fering with the findings of the court upon the question of damages, and this is so whether the damages to the house allowed by the court are denominated general or special. , If the appellant sold and agreed to furnish the kind and quality of brick testified to by respondent and his witnesses, and the court found that it did, then we can see no good reason why it should escape from the consequences which naturally resulted from not furnishing the kind and quality it had agreed to furnish.

The judgment is affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.