NEWBURGER COTTON COMPANY *v.* STEVENS.

Opinion delivered January 19, 1925.

1. TROVER AND CONVERSION—UNAUTHORIZED SALE BY WAREHOUSE-MAN.—One who buys and disposes of cotton belonging to plaintiff from a warehouseman having no authority to sell same is liable for its conversion, though he acted in good faith.

2. TROVER AND CONVERSION—MEASURE OF DAMAGES.—The measure of damages for the conversion of an article such as cotton, the market value of which is liable to frequent and great fluctuation, is the highest price for which the same grade has been sold between the time of conversion and a reasonable time after notice to the owner of the conversion.

Appeal from Johnson Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

STATEMENT OF FACTS

Appellees instituted separate actions in the circuit court against appellant for the wrongful conversion of certain bales of cotton described in their respective complaints. By consent of both parties the suits were consolidated and transferred to the chancery court.

It appears from the record that A. L. Gray was engaged in selling general merchandise at Prairie View, Logan County, Arkansas. According to the testimony of A. L. Gray, the cotton in controversy in this suit was placed by appellees in his warehouse to be stored there and kept by him until he was directed to sell it. A. L. Gray was a customer of the Lesser-Goldman Cotton Company at Fort Smith, Arkansas, and was indebted to it in a large sum. He shipped to that company 600 bales of cotton, including the cotton in controversy. He did this because said company requested him to do so, and because it had a better warehouse for storing the cotton. T. M. Mason Cotton Company was also a cotton dealer at Fort Smith, Arkansas, and T. M. Mason was the manager of that company. The Lesser-Goldman Cotton Company insisted on Gray selling the cotton in its warehouse for the purpose of paying it the indebtedness owed to it by him. T. M. Mason, for the T. M. Mason Cotton Company, actually made the sale. Gray heard Mason talking over the telephone to the Newburger Cotton Company at Little Rock, Arkansas, about the sale of the cotton. The cotton in question was at this time in the hands of the Lesser-Goldman Cotton Company, and Mason was selling the cotton for that company. We quote from his testimony the following:

"Q. Mr. Gray, you state that all of the cotton embraced in this case, with the exception of a few bales mentioned in your direct examination was sold to Newburger Cotton Company? A. That was my understanding. Q. The deal was made by telephone? A. I think it was. Q. After the deal was closed, state whether you billed the cotton to Newburger Cotton Company, and state who assisted you in doing so? A. I assisted one

of the clerks of Lesser-Goldman Cotton Company at Fort Smith in making out the invoices to Newburger Cotton Company. Q. Did you list the cotton which you have just testified was sold to Newburger Cotton Company? A. It was in that list of about six hundred bales on consignment to Lesser-Goldman Cotton Company. Q. In that inventory did yon invoice the shipping number of all the bales involved in these suits with the exception of a few bales mentioned in your direct testimony? A. I don't remember making the invoices, but they were made in the code that was consigned to Lesser-Goldman Cotton Company. Q. All these numbers were among the consigned cotton? A. Yes sir. Q. Did you say a draft was attached to the invoices? A. Yes sir. Q. These statements contain a list of the various cotton consigned to Lesser-Goldman Cotton Company, and afterwards sold to the defendant, Newburger Cotton Company? A. Yes, I sold that to Newburger Cotton Company. Q. In your invoice of the cotton which you sold to Newburger Cotton Company, the list embraces all these suits with the exceptions of four or five bales? A. Yes. To my recollection all were in that invoice. Q. A draft was attached to the invoice? A. Yes."

Again, Gray testified that the cotton in controversy in this case was included in the cotton that was invoiced to Newburger Cotton Company. The cotton was sold about the first of August, 1921, at ten cents the pound, and that was the fair market value of it. Some time in September following the market value of cotton was about twenty-one cents the pound. Gray admitted that appellees came to him about the 10th of September, 1921, and demanded their cotton or a settlement for it. When they found that he had sold the cotton, they demanded the price of cotton at that time, which was twenty or twenty-one cents the pound.

All of the appellees were witnesses for themselves. According to their testimony, they placed the cotton in question with A. L. Gray to be kept for them in his warehouse and to be sold when directed by them. They never

directed him to sell the cotton, and did not know he had sold it until about the 10th of September, 1921. They went to him at that time for the purpose of directing him to sell it, and, for the first time, found that he had already sold it. They then demanded that he should pay them the market price of cotton at that time. The suit was originally brought against the Lesser-Goldman Cotton Company and the Newburger Cotton Company. A nonsuit was taken as to the Lesser-Goldman Cotton Company and a decree rendered in favor of appellee against the Newburger Cotton Company. The case is here on appeal.

*Coleman, Robinson & House,* for appellant.

It is essential to a right of recovery in this action to prove a conversion by the defendant, and it is necessary for the plaintiff to prove that the cotton was appropriated by it to the exclusion of the plaintiff. 34 Ark. 421. The only testimony on which a conversion could be found is on the testimony of what Mason told Gray, and that was clearly incompetent, since Mason did not testify. 195 S. W. 683. Appellee cannot rely on the invoice which Gray says he assisted in making out. 91 U. S. 618, 630; 150 U. S. 312, 328; 203 S. W. 917. Damages for conversion of personal property, where the tort-feasor is acting in good faith without illegal motive or wrongful intent, should be the same in case of commodities with fluctuating values as in the case of commodities with stable values, viz.: the value of the commodity at the time of the conversion. If the cotton was bought by Newberger Cotton Company from Lesser-Goldman Cotton Company, it was in good faith and without any knowledge that it did not belong to the latter company. 158 Ark. 619; 25 Atl. 1043; 79 S. W. 836; 208 S. W. 224; 20 Atl. 429; 138 Pac. 910; 134 S. W. 767; 250 S. W. 898; 57 Ark. 92; 20 S. W. 913; 158 Ark. 24.

*G. O. Patterson,* for appellees.

The question as to whether or not there was a conversion is settled by the finding of the trial court. The

court did not, in fact, base its judgment for damages upon the highest market value between the conversion and the day of trial, although we think that would have been proper, under the trend of recent decisions. 26 R. C. L. 1151; L. R. A. 1917B, 787. The rule applied by this court in cases of wrongful cutting and conversion of timber, the trespass being wilful, was not followed by the trial court, but the reason for the application of that rule would apply to the facts in this case, because here there was a wilful, wrongful and intentional conversion. 69 Ark. 302; 130 Ark. 547; 158 Ark. 619.

HART, J., (after stating the facts). It is earnestly insisted that the evidence is not sufficient to warrant the chancery court in finding that there was a conversion of the cotton by the Newberger Cotton Company. We cannot agree with contention of counsel for appellant. According to the testimony of A. L. Gray, he shipped 600 bales of cotton from his warehouse in Prairie View, Logan County, Arkansas, to Fort Smith, Arkansas, and the cotton in question was in the lot. The Lesser-Goldman Cotton Company insisted on allowing it to sell the cotton, and T. M. Mason, of the T. M. Mason Cotton Company of Fort Smith, was employed to make the sale. Gray heard Mason talking with somebody at Little Rock about the sale of the cotton, and understood that there was an agreement to sell it for ten cents the pound. After the conversation on the telephone was closed, he assisted in making an invoice of the cotton and consigning it to the Newburger Cotton Company at Little Rock, Arkansas. The cotton in controversy was included in the list of cotton shipped by the Lesser-Goldman Cotton Company at Fort Smith to the Newburger Cotton Company at Little Rock. The latter company paid the Lesser-Goldman Cotton Company for the cotton, and refused to pay appellees for it. Practically the undisputed testimony shows that neither Gray nor the Lesser-Goldman Cotton Company had permission from the appellees, who were the owners of the cotton, to sell it. It is true that appellant purchased the cotton upon the faith that the Lesser-

Goldman Cotton Company had the right to sell it, and that the latter company sold it believing it had a right to do so as the cotton factor of A. L. Gray. These facts, however, do not relieve appellant from liability. Appellant's liability to appellees rests upon the ground that it has converted, though in good faith, and under a mistake as to its rights, the property of the appellees. Appellant is therefore liable to respond in damages for the value of the cotton.

It is next contended by counsel for appellant that the measure of damages for the conversion of the cotton is the value of the cotton at the time of the conversion. This is the general rule, but it has been modified with respect to the conversion of property the market value of which is liable to frequent and great fluctuation. The proper measure of damages for the conversion of cotton, which is subject to depression and inflation of price in the market, is the highest price for which the same grade of cotton has been sold between the time of the conversion and a reasonable time after notice to the owner of such conversion; in other words, the price at which the owner might have replaced the cotton within a reasonable time. *Galigher* v. *Jones,* 129 U. S. 193; *Wright* v. *Bank of Metropolis* (N. Y.), 1 L. R. A. 289; 6 Am. St. Rep. 356, 18 N. E. 79; *Dimock* v. *U. S. Nat. Bank* (N. J. L.), 39 Am. St. Rep. 643; *Citizens St. R. Co.* v. *Robbins* (Ind.), 42 N. E. 916; *Brewster* v. *Van Liew* (Ill) 8 N E. 842; and *Wiggin* v. *Federal Stock, etc., Co.* (*Conn.*), 59 Atl. 607.

Judge Peckham, who delivered the opinion in the case cited above from New York Court of Appeals, said that justice and fair dealing are both more apt to be promoted by adhering to the rule which imposes the duty upon the plaintiff to make his loss as light as possible, notwithstanding the unauthorized act of the defendant. It has been well said that to adopt the value as existing at the time of actual conversion would enable the wrongdoer to make the market for the owner and deprive him of his cotton, whether he so wills or not.

On the other hand, to adopt the highest value between the time of actual conversion and the trial would be to encourage the owner to delay and speculate upon the chances of higher markets without assuming the chances of lower markets. Justice can only be done in such cases by requiring the factor or broker to pay a sum sufficient to put the other party in a position as good as he had before the sale, and this can more nearly be done by holding the true and just measure of damages in these cases to be the highest intermediate value of the cotton between the time of its conversion and a reasonable time after the owner has received notice of it to enable him to replace the cotton.

There is nothing in the case of *Hudson* v. *Burton,* 158 Ark 619, which conflicts with this rule. In that case the landlord had a lien on his tenant's crop for supplies furnished him to make and gather the same. The tenant moved away from the place, without paying his account. The landlord, under our statute, was entitled to the possession of the crop, in order that he might subject it to his lien for supplies furnished the tenant. He took possession of the property without resorting to law; but he had a lien on the property, which he might have asserted in the courts, and for that reason he was only held liable to the tenant for the value of the crop at the time of its conversion.

In the case before us, appellant had no lien of any kind whatever on the cotton, and the rule announced above applies for the reasons given. The cotton was sold about the first of August, 1921, and the owners found out about it about the 10th of September, 1921. Cotton at that time had doubled in value, and the owners demanded the market value of that date.

Under the rule announced above, the finding of the chancellor in favor of appellee was fully justified by the evidence, and the decree will therefore be affirmed.