**DETROIT & I. R. CO. v. A. GUTHRIE & CO., Inc.**

No. 6455.

Circuit Court of Appeals, Sixth Circuit.
June 5, 1934.

W. R. Middleton, of Detroit, Mich. (Keifer & Keifer, of Springfield, Ohio, Longley, Bogle & Middleton, of Detroit, Mich., and William W. Keifer, of Springfield, Ohio, on the brief), for appellant.

Montreville J. Brown, of St. Paul, Minn. (Oppenheimer, Dickson, Hodgson, Brown & Donnelly, of St. Paul, Minn., and McMahon, Corwin, Landis & Markham, Samuel S. Markham, and Irvin G. Bieser, all of Dayton, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

In 1927 the appellant determined to construct a line of railroad in Ohio about four miles in length, extending from the north abutments of a bridge crossing the Maumee river north to milepost 80, a point near a track of the Wabash Railroad. It also determined to erect a substructure for the Maumee River Bridge. The proposed route of the road crossed Turkeyfoot creek three times, necessitating the erection of three bridges. On June 15, 1927, appellant contracted with the M. E. White Company for the erection of the substructure of the Maumee River Bridge, the work to be completed in one year from that date; and on September 26, 1927, it contracted with Green & Sawyer for the construction of the three Turkeyfoot Creek bridges, to be completed May 1, 1928. Part of the grading for the roadway could be done by teams and scrapers; part of it required the hauling in of earth for fills. In order to obtain the earth the appellant acquired a tract of land of about 45 acres for a borrow pit west of a point midway between the termini of the proposed line. On January 16, 1928, the appellee entered into a contract with appellant to do the grading work from the Maumee river to milepost 80 according to specifications furnished by the appellant. Appellee entered upon the performance of the work about the middle of May, and, after finishing it, brought this suit against the appellant to recover the additional costs it was put to in performing the work, resulting, as it claimed, from misrepresentations made by the appellant in the specifications as to the conditions under which the work could be performed. The appellant filed answer denying the averments of misrepresentation, and by counterclaim sought judgment for an overpayment made to the appellee. The jury found in favor of appellant on the counterclaim, and for the appellee as follows: $30,825.48 for loss or damage sustained by reason of the delay in completing the masonry or bridge structures; $14,580.55 loss on account of misrepresentations as to the borrow pit; and $3,386.02 additional expense incurred as a result of the difference between the number of cubic yards of dirt for long-haul excavation indicated by appellant and the actual amount thereof. The appellee filed a remittitur as to the latter item, and the court entered judgment on the other awards. No appeal has been taken from the finding and judgment on the counterclaim.

The claim of loss on account of delay in completing the bridge structures consisted of increased expense or costs of moving equipment to the borrow pit and doing the excavation and filling work. The appellee contended, and introduced evidence to show, that had the bridges been completed by May 1, it could have laid a track along the right of way and over the bridges so that its equipment could have been placed on small cars at the Wabash siding and transported to the borrow pit, whereas, the bridges not being completed by that date, it was compelled to unload the equipment at Liberty Center and haul it from that point to the borrow pit at an increased expense; and, further, that it contemplated using camp cars on the siding of the Wabash for its men and transporting them to and from their work over the tracks which it proposed to lay, but being unable to lay the tracks because of the delay in finishing the

bridges, the men left the work, and it was compelled to obtain other men at additional expense. It also contended that had the bridges been constructed, it could have constructed the railway tracks and hauled earth in cars both north and south from the borrow pit at a saving in labor and time.

It may be accepted as settled that an employer is liable for losses sustained by a contractor as the result of misrepresentations of fact in specifications upon which the contractor relied in contracting to do the work. Hollerbach v. United States, 233 U. S. 165, 34 S. Ct. 553, 58 L. Ed. 898. But it is also settled that the employer cannot be held responsible for statements of expectation, opinion or judgment, honestly entertained. Connecticut Mut. Life Ins. Co. v. Luchs, 108 U. S. 498, 508, 2 S. Ct. 949, 27 L. Ed. 800; Southern Development Co. v. Silva, 125 U. S. 247, 250, 8 S. Ct. 881, 31 L. Ed. 678; Johansson v. Stephanson, 154 U. S. 625, 14 S. Ct. 1180, 23 L. Ed. 1009.

Appellee's claim of misrepresentation as to the dates the bridge structures would be completed and ready for its use is founded upon the following provisions of the specifications:

"Backfilling of Abutments. The contractor shall backfill all abutments within the limits of this work constructed by other contractors. It is anticipated that the abutments will be ready for backfilling about April 1, 1928. The materials used in backfilling these structures shall be obtained from the borrow pit at Station 4398 to Station 4420. The date shown above is as close as can be determined at this time and the railroad will make every effort to have the structures ready at the date specified or within reasonable length of time thereafter, but does not guarantee that they will be. The bridge at Station 4420 will be the first of the three (3) Turkeyfoot Creek bridges completed. * * *

"Masonry Structures. The railroad has contracted for the completion of all masonry structures at dates that should not interfere with the contractor's operations. In case of non-completion at the dates contracted for the railroad will take such measures, with the contractor's co-operation that will permit him to carry on his work with the minimum of delay and expense."

In the first of these provisions it was stated that it was anticipated the abutments would be ready for backfilling April 1. This was not a representation of fact but an expression of an opinion or expectation. Furthermore, it was qualified by the further statement that the date indicated was as close as could be determined at that time, and that appellant would make every effort to have the structures ready on that date or within a reasonable time thereafter, but did not guarantee that they would be ready. There is nothing in the provision, as we read it, justifying the contention that it contains a statement of fact as to the date the abutments would be ready for backfilling.

The second provision stated that the railroad company had contracted for the completion of the bridges at dates that should not interfere with the contractor's operations. The statement did not purport to give the dates of completion according to contract. The proofs show that the appellant had contracted for the completion of the Turkeyfoot Creek bridges by May 1 and the substructure of the Maumee Bridge by June 15, and there is no representation in the specifications to the contrary. The statement that the dates contracted for were such as should not interfere with the contractor's operation was not a statement of a fact but an expression of an opinion. There being no misrepresentation of fact as to the bridges, nor any evidence to show that appellant did not honestly believe that the abutments would be ready for backfilling April 1 or that the dates for which it had contracted for the completion of the bridges were such as would not interfere with appellee's operations, the appellee was not entitled to recover any loss or expense which it was put to because of the failure of the appellant to contract for their completion at earlier dates or to have them completed on the dates contracted for. On the latter point the specification provided: "In case of noncompletion at the dates contracted for the railroad will take such measures, with the contractor's co-operation that will permit him to carry on his work with the minimum of delay and expense." This provision binds neither party to take any specific step in case of noncompletion on the dates contracted for. It is too indefinite to determine what would constitute its breach or to sustain a recovery on that account. Moreover, the evidence shows that the appellant urged the bridge contractors to complete the structures as promptly as possible, and that when appellee began work, about the middle of May, its vice president met the foreman of the bridge contractor and told him: "If you are out of the way in a couple of weeks, it will be all right." So far as the record shows, the appellee did not seek the co-operation of appellant to expedite the completion of the masonry structures. The only thing that it did

was to suggest that appellant have the contractor for the abutments for the Maumee Bridge build a plant on the north side of the river. Whether this was feasible or whether it would have expedited the erection of the substructure of the Maumee Bridge does not appear. It is our view, therefore, that the court should have directed the jury to return a verdict for the appellant as to the claims based on delay in constructing the abutments and bridges.

Even if appellant had made a definite promise as to the date the bridges would be completed, upon which appellee relied, the court should nevertheless have directed a verdict for the appellant as to the claim for the difference between the cost of moving the pit equipment from Liberty Center to the pit and what the cost would have been had it been moved from the Wabash siding by the railway which the appellee claims it contemplated building. This part of the appellee's claim was in the nature of special damages not within the contemplation of the parties at the time the contract was made. It has long been the law that where two parties make a contract which one of them breaks, the damage which the other party is entitled to recover for the breach is only such as may fairly and reasonably be considered as arising naturally according to the usual course of things or as may reasonably be supposed to have been in the contemplation of the parties, at the time the contract was made, as the probable result of its breach. Hadley v. Baxendale, 9 Exch. 341, 354; Primrose v. Western Union Telegraph Co., 154 U. S. 1, 29, 14 S. Ct. 1098, 38 L. Ed. 883. It was certainly not contemplated by the appellant, in entering into the contract here sued upon, that the failure to have the bridges completed at any fixed date would result in an expense in moving material and supplies to the pit in excess of the cost of moving them from Liberty Center, Ohio. On the contrary, both parties contemplated that the appellee would move its equipment and supplies from Napoleon, Ohio, on the appellant's main line, or from Liberty Center, on the line of the Wabash Railway. Section 20 of the specifications provided: "Shipment of Contractor's Equipment and Materials.

The contractor's equipment, supplies and materials may be shipped to Napoleon, Ohio, on the main line of the Detroit, Toledo and Ironton railroad, or by the Wabash railway to Liberty Center, Ohio. The contractor shall provide all transportation from the above points to the work and shall pay all freight charges, demurrage and other transportation costs to these stations according to established tariffs."

The claim for loss on account of misrepresentation as to the borrow pit was based on a provision of the specifications stating: "The excavation of this borrow pit shall be carried to Elevation 655, D. & I. Datum, or to blue clay, which test borings show to be approximately fifteen (15') below the surface. If the blue clay is above Elevation 655, none of the blue clay shall be excavated or placed in the embankment." The appellee introduced evidence to show that blue clay was found 6½ feet below the surface, which rendered the taking out of earth more expensive than it would have been had none appeared until the excavation reached a depth of 15 feet below the surface. The court permitted a recovery on this account on the theory that the appellant falsely stated in the specifications that there was no blue clay in the tract nearer the surface than 15 feet. This was a misconception of the meaning of the specifications. The only representation of fact made therein was that test borings had been made, and that they showed blue clay approximately 15 feet below the surface. The issue to be submitted to the jury was not whether there was blue clay nearer the surface than 15 feet, but whether the representation that borings had been made and they showed no blue clay less than 15 feet below the surface was true or untrue. The finding of blue clay 6½ feet below the surface by appellee would of course be evidence tending to show that it was not true. On another trial the court will submit to the jury the issue as to the truth or falsity of this representation, directing it to return a verdict on this phase of the case upon a finding on that issue.

The judgment is reversed, and the cause remanded for further proceedings.