**SCHLOTTMAN et al. v. PRESSEY et al.**
**PRESSEY et al. v. SCHLOTTMAN et al.**

Nos. 4324, 4325.

United States Court of Appeals,
Tenth Circuit.

March 25, 1952.

Rehearing Denied April 17, 1952.

G. A. Bangs, Rapid City, S. D. (W. A. McCullen, Rapid City, S. D., and Wm. Rann Newcomb, Denver, Colo., on the brief), for appellants and cross-appellees.

French L. Taylor, Denver, Colo. (Thurmon Gregory & Taylor, Denver, Colo., on the brief), for appellees and cross-appellants.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiffs bought approximately 2,000 feet of 6⅝ inch O D 17 pound used oil well casing from the defendants at $2.00 per foot. They brought this action to recover damages resulting from the collapse of the casing in an oil well which was drilled by them in South Dakota. The trial court, sitting without a jury, found the damages claimed were the direct and proximate result of the failure of defendants to deliver oil well casing of the weight purchased but applied a rule of damages which permitted the recovery of only nominal compensation. Both parties have appealed.

The defendants were in the business of wholesaling used oil well drilling equipment at Pueblo, Colorado. In March of 1948, the plaintiff, Buford O. Schlottman, in response to an advertisement of the defendants, telephoned the defendant, S. W. Pressey, to make inquiry about the advertised casing. He was advised that the defendants had for sale some 6⅝ inch 17 pound casing in good condition and was quoted a price of $2.00 per foot. Pressey then telegraphed Schlottman that he had on hand 5,000 feet of 6⅝ inch O D 17 pound good used casing at $2.00 per foot. Schlottman immediately replied to this wire by letter in which he accepted the offer of the sale and agreed to purchase 2,000 feet of the casing. In the letter it was stated that the casing was to be subject to inspection at Pueblo, and a check for $1500 was enclosed as part payment on the purchase. The balance of the contract price was to be paid when the casing was loaded on the truck at defendants' place of business in Pueblo.

On the same day that Pressey received the acceptance letter, he wrote to Schlottman acknowledging receipt of the acceptance and enclosed a circular relating to used casing in which it was stated that "weights shown are not guaranteed." This letter and circular were not received until after the offer of sale had been accepted by the plaintiffs.

Some time later, Schlottman went to the defendants' place of business in Pueblo for the purpose of accepting delivery of the purchased casing. He was shown casing which was said to be 6⅝ inch 17 pound oil well casing. Schlottman examined the same for rust and defects and was at liberty to accept or reject the different lengths of casing which he inspected. The selected casing was paid for and removed to Newell, South Dakota, where it was used by the plaintiffs in the drilling of an oil well. The casing was run in the well to a depth of 1407 feet from the surface where it collapsed causing the loss of the casing and tools and an abandonment of the well. It was not until then that the plaintiffs discovered that the casing was of 13 pound weight per foot and not 17 pound weight as purchased. The defendants were notified of this fact together with the losses which the plaintiffs had suffered as a result of the collapse of the casing.

At the close of the trial, the court found that the defendants offered to sell and the plaintiffs agreed to buy 2,000 feet of 6⅝ inch O D 17 pound good used casing at $2.-

00 per foot subject to plaintiffs' inspection at the time of delivery; that plaintiffs did inspect the casing prior to the delivery for rust and other defects but did not inspect the same for weight; that the casing delivered to the plaintiffs was not 17 pound casing as provided for by the terms of the contract but was 13 pound casing; that the plaintiffs did not know that the casing was 13 pound casing at the time of the delivery; that the same was used in an oil well which was drilled to a depth of 1407 feet at which depth trouble developed resulting in the abandonment of the well; that the direct and proximate cause of the abandonment of the well and the resulting loss was the collapse of the casing; and that the casing collapsed as a result of using 13 pound casing instead of heavier weight at a depth of 1300 to 1400 feet and not because the casing was rusted or rotten and unfit for use in any depth well. In its findings the court itemized the losses which were the direct and proximate result of the collapse of the casing and the subsequent abandonment of the oil well. The total of these items was $13,574.81. The court found that 17 pound oil well casing and 13 pound oil well casing are separate and distinct types as classified by the oil industry, and that it is difficult to distinguish between the two types without using a weighing or measuring instrument, particularly in used casing. The court further found that the plaintiffs did not disclose to the defendants the contemplated depth of the well for which the casing was to be used and that the evidence did not disclose that the defendants were aware of the purpose plaintiffs had in purchasing the casing.

It was the expressed view of the trial court that the plaintiffs sought to recover special damages, and that since the defendants did not know the plaintiffs intended to use the casing in an oil well to the depth of over 1400 feet, special damages could not be recovered. The court was of the opinion that Sec. 15 of the Uniform Sales Act, see '35 C.S.A. Ch. 143A, Sec. 15, relating to implied warranties as to the quality or fitness for any particular purpose of goods supplied under a contract of sale, was applicable. Under this section, where the buyer does not make known to the seller the particular purpose for which the goods are required, no implied warranty arises, and damages are limited to the difference between the value of the goods at the time of delivery and the value they would have had if they were as warranted. '35 C.S.A. Ch. 143A, Sec. 69(7). There was no evidence of the difference in value, if any, of 17 pound and 13 pound casing. The plaintiffs, however, do not rely upon an implied warranty of quality, but base their claims exclusively upon an express warranty that the casing purchased was 17 pound casing. In such cases the measure of damages is the loss directly and naturally resulting in the ordinary course of events, from the breach of warranty or the contract to deliver specific goods. '35 C.S.A. Ch. 143A, Sec. 69(6).

The seller is bound to foresee injuries which follow a breach of contract in the usual course of events and it is not necessary for the buyer to show specifically that the seller had knowledge of the facts. When the goods are sold for consumption and use, the seller is then held to foresee and anticipate injuries which may result from breach of the contract of sale if the goods are put to their customary consumption and use. Such injuries are said to be the natural result of the breach. Restatement, Contracts, Sec. 330.

The court held that the loss of the plaintiffs' well was the natural result of the defendants' breach of their contract to deliver 17 pound casing and consequently the loss caused by the breach was contemplated by the parties. The plaintiffs did not intend to or use the casing for any other purpose than that for which it was manufactured or for which it was customarily used, so that there were no special circumstances present.

The fundamental basis for an award of damages for a breach of contract is just compensation for those losses which necessarily flow from the breach. Blair v. United States, 8 Cir., 150 F.2d 676. Generally, the injured party is entitled to recover those damages which may fairly and reasonably be considered as arising naturally according to the usual course of things or

as may reasonably be supposed to have been in the contemplation of the parties at the time the contract was made, as the probable result of its breach. Gulf States Creosoting Co. v. Loving, 4 Cir., 120 F.2d 195; Twachtman v. Connelly, 6 Cir., 106 F.2d 501; Detroit & I. R. Co. v. A. Guthrie & Co., Inc., 6 Cir., 72 F.2d 126; Kaercher v. Citizens' Nat. Bank of Ortonville, Minn., 8 Cir., 57 F.2d 58; Atlantic Oil Producing Co. v. Masterson, 5 Cir., 30 F.2d 481; Aetna Casualty & Surety Co. v. North Sterling Irr. District, 75 Colo. 185, 225 P. 261.

The evidence is clear that 13 pound casing is too light in weight and strength for use in a well 1400 feet deep, while 17 pound casing is adequate and customarily used in wells of such depth. The defendants were engaged in the business of selling oil well drilling equipment including casing. One member of the firm had handled such casing for 20 or 25 years. Under all the circumstances of this case, the defendants were bound to foresee that the casing which they sold to the plaintiffs would be placed in an oil well where 17 pound casing was customarily used and that the collapse of the 13 pound casing was the natural result of the breach of the express warranty to furnish 17 pound casing. Williston on Contracts, Vol. 5, Sec. 1344; 15 Am.Jur., Damages, Sec. 52; Globe Refining Co. v. Landa Cotton Oil Co., 190 U.S. 540, 23 S.Ct. 754, 47 L.Ed. 1171; Howard v. Stillwell & Bierce M'f'g. Co., 139 U.S. 199, 11 S.Ct. 500, 35 L.Ed. 147; Atchison, T. & S. F. Ry. Co. v. Jarboe Livestock Commission Co., 10 Cir., 159 F.2d 527; Boylston Housing Corp. v. O'Toole, 321 Mass. 538, 74 N.E.2d 288, 302, 172 A.L.R. 1251.

The trial court correctly found the elements of damage which were the direct and proximate result of the collapse of the casing. This damage was the result of a breach of an express warranty respecting the weight of the casing sold, and judgment should have been entered for the plaintiffs for such amount without interest as the damages were unliquidated. '35 C.S.A. Ch. 88, Sec. 2; Denver Horse Importing Co. v. Schafer, 58 Colo. 376, 147 P. 367; Robberson Steel Co. v. Harrell, 10 Cir., 177 F.2d 12.

The contention of the defendants that the inspection by the plaintiffs barred recovery is without merit. Defendants sold 17 pound casing which is indistinguishable from 13 pound casing, after an ordinary inspection. The trial court rightly found that the inspection was only for the purpose of determining the condition of the casing and not its weight. Under such conditions the inspection would not prevent their recovery of damages. Rocky Mountain Seed Co. v. Knorr, 92 Colo. 320, 20 P.2d 304. Likewise the contention that plaintiffs failed to notify the defendants of the alleged breach of warranty within a reasonable time in accordance with '35 C.S.A. Ch. 143A, Sec. 49, bars recovery, is without merit. The casing collapsed in July and the defendants were notified by letter of the alleged breach in September. There is no suggestion that the defendants suffered any prejudice as a result of not being notified at an earlier date and the harsh rule of forfeiture should not be applied.

Judgment is reversed and the cause remanded with instruction to enter judgment in accordance with the views herein expressed.