**NEPHI PROCESSING PLANT, Inc., a corporation, Appellant,**

v.

**H. A. TALBOTT and Margaret Talbott, Appellees.**

No. 5558.

United States Court of Appeals Tenth Circuit.

Sept. 3, 1957.

Edward W. Clyde (of Clyde & Mecham), Salt Lake City, Utah, for appellant.

Richard M. Taylor, Spanish Fork, Utah, and Arthur H. Nielsen, Salt Lake City, Utah, for appellees.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

In February 1954, H. A. Talbott and his wife Margaret, residents of Palisade, Colorado, purchased approximately 20,-000 turkey poults from the defendant, Nephi Processing Plant, Inc., a Utah corporation. They brought this action to recover damages for breach of express or implied warranty of the poults, for conversion of the turkeys after they were delivered to and processed by the defendant, and for other specific items of damage. Western Cooperative Hatcheries, a corporation, was brought into the action by third-party proceedings instituted by Nephi, alleging that if Nephi was responsible in damages to the plaintiffs, Western Hatcheries was responsible to Nephi. The trial court dismissed the third-party proceedings on the ground that the issues therein had been determined in an earlier proceeding between the parties.[1] The trial court separated plaintiffs' claims into three categories and submitted the claims to a jury, which returned a verdict totaling $41,920.00. This is an appeal from the judgment entered upon this verdict.

After the case had been submitted to this court, Nephi and Western Hatcheries settled their differences and the appeal, insofar as it affected Western Hatcheries, was dismissed. The questions remaining to be determined arise out of instructions given to the jury relating to the measure of damages for breach of warranty and conversion. It is also contended that the court erred in submitting to the jury a claim made by the Talbotts for the cost of the delivery of the turkeys to Nephi.

Nephi was engaged in the business of processing live turkeys for market. Its representatives induced the Talbotts to purchase the turkey poults for the purpose of growing them for delivery to Nephi approximately six months after they were received. Nephi had full knowledge of the purpose for which the poults were purchased. The Talbotts had had very little experience in raising turkeys for market and relied upon the judgment of Nephi. Within a few days after the poults were received by the

1. Nephi Processing Plant v. Western Cooperative Hatcheries, 10 Cir., 242 F.2d 567.

Talbotts, it became apparent that they were afflicted with infectious sinusitis, a disease common to turkey poults, which required special medication and care. It is conceded that the disease may cause substantial death loss of turkey poults and that those which survive will not gain the weight that normally healthy turkeys do. The court instructed the jury that if it found that the plaintiffs were entitled to recover for a breach of either an express or implied warranty of quality in the sale of the turkeys, it should assess such damages as were found to have been sustained by reason of the breach of the warranty, including any cost incurred by plaintiffs in reducing such loss and including loss of profit. Nephi excepted to this instruction on the ground " \* \* \* that the measure of damages for breach of warranty should be measured as of the time of the breach and should be the reasonable difference in value between what was sold and what was delivered at the time the warranty was breached \* \* \*". The question here is limited to that raised by the exception. Rule 51, F.R. Crim.P. 18 U.S.C.A. Nephi relies on § 60–5–7(7), Utah Code Anno., which provides that "In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty". Subsection 7 is applicable to warranties of quality in the absence of special circumstances, and there were special circumstances in this case. The primary purpose of the purchase was to raise the turkeys for market. This was known to Nephi. The warranty was breached when the diseased poults were delivered. Nephi was notified of the diseased condition of the poults and it advised their retention by the Talbotts and prescribed medical treatment for them. Under the

existing conditions no other course was left to the Talbotts but to keep the poults and do the best they could with them. To allow as damages only the difference between the value of the poults when delivered and their value in the diseased condition would not fully compensate the Talbotts for the actual damages suffered. This was not the only damage that naturally resulted from this breach of warranty.

█ Following the Utah statute, the court, without objection, instructed the jury that where a buyer expressly or by implication makes known to the seller the particular purpose for which an article is to be used and the buyer relies upon the skill and judgment of the seller, there is an implied warranty that the article is reasonably fit for the purpose for which it was purchased. § 60–1–15, Utah Code Anno. This presented a factual question for the jury which was resolved in favor of the Talbotts. When a breach of an express or implied warranty occurs, the measure of damages is the loss directly and naturally resulting, in the ordinary course of events, from the breach. § 60–5–7(6),[2] Utah Code Anno.; Williston on Sales, Rev.Ed., Vol. 3, § 614; Jorgensen v. Gessell Pressed Brick Co., 45 Utah 31, 141 P. 460; Schlottman v. Pressey, 10 Cir., 195 F.2d 343, certiorari denied 344 U.S. 817, 73 S.Ct. 12, 97 L.Ed. 636. See also Smith v. Onyx Oil & Chemical Co., 3 Cir., 218 F.2d 104.

██ The measure of damages for breach of warranty is to be determined by the general rules that govern damages for breach of contract. In Schlottman v. Pressey, supra [195 F.2d 345], we said:

"The fundamental basis for an award of damages for a breach of contract is just compensation for those losses which necessarily flow from the breach. Blair v. United States, 8 Cir., 150 F.2d 676. Gener-

---

2. Sec. 60–5–7(6) reads: "The measure of damages for breach of warranty is the loss directly and naturally result-ing in the ordinary course of events from the breach of warranty."

ally, the injured party is entitled to recover those damages which may fairly and reasonably be considered as arising naturally according to the usual course of things or as may reasonably be supposed to have been in the contemplation of the parties at the time the contract was made, as the probable result of its breach. Gulf States Creosoting Co. v. Loving, 4 Cir., 120 F.2d 195; Twachtman v. Connelly, 6 Cir., 106 F.2d 501; Detroit & I. R. Co. v. A. Guthrie & Co., Inc., 6 Cir., 72 F.2d 126; Kaercher v. Citizens' Nat. Bank of Ortonville, Minn., 8 Cir., 57 F.2d 58; Atlantic Oil Producing Co. v. Masterson, 5 Cir., 30 F.2d 481; Aetna Casualty & Surety Co. v. North Sterling Irr. District, 75 Colo. 185, 225 P. 261."

See also Wasatch Chemical Co. v. Leon, Utah, 259 P.2d 301; Park v. Moorman Mfg. Co., 121 Utah 339, 241 P.2d 914, 40 A.L.R.2d 273; Jorgensen v. Gessell Pressed Brick Co., supra. The cost of minimizing damages and loss of profits, if found to be within the contemplation of the parties when the contract was made and a direct consequence of a breach of warranty, are recoverable as damages. Restatement, Law of Contracts, § 330; Dally v. Isaacson, 40 Wash.2d 574, 245 P.2d 200; Wasatch Chemical Co. v. Leon, supra; Park v. Moorman Mfg. Co., supra; Tuttle v. Bootes Hatcheries & Packing Co., D.C.D. Minn.1953, 112 F.Supp. 705.

■■■ Pursuant to a processing agreement which the Talbotts executed, the turkeys were delivered to Nephi for processing during the fall of 1954. Nephi was instructed in writing to sell the processed turkeys on the Christmas market. Early in January 1955 Nephi furnished the Talbotts with a statement of receipts and disbursements from the sale of the turkeys. After this suit had been instituted, it was discovered that Nephi had sold the turkeys prior to the 1954 Christmas market. The complaint was amended to include a cause of action for the wrongful conversion of the processed turkeys. On the issue of damages for conversion, the jury was instructed that if it found that the plaintiffs were entitled to recover that it " * * * should assess the plaintiffs damages and award the plaintiffs the highest price for which the same grade of turkeys had been sold between the time of such conversion and wrongful conduct and a reasonable time after the plaintiffs obtained notice of such conversion and wrongful conduct." Nephi excepted to this instruction upon the grounds that the measure of damages " * * * should be the reasonable value of the property converted at the time of the conversion." The Utah courts have recognized that as a general rule the measure of damage for conversion of property is the value of the property at the time of the conversion, plus interest. Haycraft v. Adams, 82 Utah 347, 24 P.2d 1110; Columbia Trust Co. v. Farmers' & Merchants' Bank, 82 Utah 117, 22 P.2d 164; Truitt v. Patten, 75 Utah 567, 287 P. 175; Western Securities Co. v. Silver King Consol. Mining Co., 57 Utah 88, 192 P. 664. It has been held, however, that the rule has no application where the converted chattels are of a kind which have a fluctuating market value. In such cases the measure of damages is the highest market price of the property within a reasonable time after the owner has notice of the conversion. Restatement, Law of Restitution, § 151(c); 53 Am.Jur., Trover and Conversion, § 99; Galigher v. Jones, 129 U.S. 193, 9 S.Ct. 335, 32 L.Ed. 658; Newberger Cotton Co. v. Stevens, 167 Ark. 257, 267 S.W. 777, 40 A.L.R. 1279; In re Salmon Weed & Co., Inc., 2 Cir., 53 F.2d 335, 79 A.L.R. 379. See also 40 A.L.R. 1282, 87 A.L.R. 817. The Utah Supreme Court has accepted this rule. Western Securities Co. v. Silver King Consol. Mining Co., supra.[3] Further-

3. In the Western Securities case the court said [57 Utah 88, 192 P. 672]: "The ordinary rule governing the meas-ure of damages in cases where the pledge wrongfully converts the property pledged is the market value of the prop-

more, Nephi was not prejudiced by the instruction or the admission in evidence of the price of turkeys for the years 1955 and 1956. It appears to be conceded that the verdict does not exceed the value of turkeys as computed by using the 1954 Christmas price. Considering the instructions as a whole, we find no prejudicial error.

■■ The processing agreement provided that the Talbotts would deliver the turkeys " * * * to the processor's plant at Nephi, Utah, for processing * * * ". In computing the amount due the Talbotts from the sale of their turkeys, Nephi deducted $3,831.10 for transportation costs. Nephi contended that the trial court erred in permitting a recovery of this amount. The Talbotts testified that prior to signing this agreement, Nephi had advised them that it would transport the turkeys without any charge except the Colorado ton mile tax. They said that they understood the language in the agreement to mean that they were to deliver the turkeys to Nephi's trucks, which in turn would deliver them to the processing plant. This testimony is inconsistent with the provisions of a written agreement between the parties. By unambiguous terms in the processing contract, the Talbotts agreed to deliver the turkeys to the processor at Nephi, Utah. The terms of such a contract cannot be altered, varied or contradicted by parol evidence. Farr v. Wasatch Chemical Co., 105 Utah 272, 143 P.2d 281, 151 A.L.R. 275; Garrett v. Ellison, 93 Utah 184, 72 P.2d 449, 129 A.L.R. 666; Halloran-Judge Trust Co. v. Heath, 70 Utah 124, 258 P. 342, 64 A.L.R. 368; Moyle v. Congregational Soc. of Salt Lake City, 16 Utah 169, 50 P. 806. See also "Parol Evidence—The Utah Version", 5 Utah Law Review 158. We therefore conclude that under the provisions of the written contract, the

transportation item was properly chargeable against the Talbotts and should not have been submitted to the jury.

The judgment will be reversed and the case remanded for new trial unless plaintiffs file a remittitur of $3,831.10 and interest with the clerk of the trial court within twenty days from the filing of this opinion, and also file a certified copy of the remittitur with the clerk of this court within ten days of its filing. If the requirements of the remittitur are complied with, the judgment as reduced will be affirmed.[4]

erty pledged with interest from the time it was converted. If the pledged property consists of stocks or bonds of a fluctuating market price, then the measure of damages, under the New York rule, is the highest market price of such stocks or bonds within a reasonable time after the pledgor obtained notice of the sale of the stock or bonds which was illegally made."

4. See United States v. Brookridge Farm, 10 Cir., 111 F.2d 461.