Staunton.

## HARMAN V. MOSS AND OTHERS.

September 20, 1917.

1.  AGENCY—*Real Estate Brokers—Commission.*—Appellant effected
    a sale of the timber upon a tract of land, of which he was
    part owner, in common with appellees and others, under a
    certain agreement or option by which was granted to the ap-
    pellant the right of buying or selling the timber on the land
    at $10.00 per acre. Appellant did not undertake the sale as
    an ordinary real estate agent or broker. The sale was of a
    special character and appellant's situation and qualifications
    for making the sale were exceptional, and the benefits flow-
    ing to appellees as the result of a very advantageous sale were
    peculiar. Therefore, appellant's compensation for making the
    sale of the timber should not be measured or governed by
    the customary commission of five per cent., but should be fixed
    by the measure of *quantum meruit,* and ten per cent. is not
    an unreasonable compensation for his services.
2.  PRIVATE WAYS—*Compensation for Granting.*—In effecting a sale
    of timber on land which he held in common with appellees and
    others, appellant also granted to the purchaser of the timber,
    as part of the consideration for the purchase price, a right of
    way over a tract of which he was sole owner.
    *Held:* That the proper measure of compensation for the right of
    way was the price therefor at which the appellant, under the
    circumstances, could reasonably have expected to sell it, in
    connection with the sale of his interest and the other interests
    which he was authorized to sell in the timber, and in connec-
    tion also with the sale of the timber on his own tract, and not
    its salable or condemnation value, independent of its acquisi-
    tion by the vendee in connection with the purchase of the tim-
    ber. Nor would a valuation of the right of way on the basis
    of the price at which the timber in which appellees were in-
    terested would have sold, independently and separately from
    the sale of the timber on appellant's own tract and the right
    of way across it, be a correct measure of its value.
3.  AGENCY—*Sale of Land—Adverse Interest of Agent—Cloud on
    Title.*—Appellant effected a sale of timber on land which he

owned in common with others, and at the same time released to the purchasers a claim for an undivided interest in the land. It appeared from the evidence that the vendee would not have purchased the timber without the inclusion of appellant's claim of title in the sale of it. The title claimed by appellant was not proved to be a valid claim, but it constituted a cloud upon the title and its extinguishment was of value to the vendee of the timber.

*Held:* That the burden of proof was upon the appellant to shew by a preponderance of evidence that the cloud upon the title to the timber had some definite value, and the appellant having sustained the burden of proof which rested upon him by proving in a satisfactory way a definite selling value of such cloud upon the title at the time of the sale of the timber, was entitled to a part of the purchase price as compensation for the release of his claim.

4. TENANCY IN COMMON—*Real Estate Brokers—Sale of Property—Compensation.*—A broker or agent guilty of bad faith to his principal forfeits all commissions or compensation for his services. But in the case at bar where the appellant, under agreement with his co-tenants, under which he made the sale of timber in question, believed he occupied the relation of an optionee purchaser and not that of broker for his co-tenants, he is not guilty of fraud which will bar him from recovering compensation for the sale, in representing to his co-tenants that the timber sold for a less sum than that actually received by him, when he believed that his personal services, money expended, a right of way over his own land, and other considerations, were worth all the purchase price over and above the price named by him to his co-tenants.

5. APPEAL AND ERROR—*Assignment of Error.*—Where the bill expressly stated that appellant was entitled to a reasonable commission or compensation for his services in a sale of timber, the issue that appellant should be denied all compensation for his services, not having been made in the pleadings or in the court below, cannot be made by assignment of error on appeal.

6. COSTS—*Appeal and Error.*—Where the appellees substantially prevailed, in an inquiry before a commissioner, there was no error in the adjudication of the court below of the costs against the appellant.

Appeal from a decree of the Circuit Court of Tazewell county.   Decree for complainant.   Defendant appeals.

*Amended and affirmed.*

## STATEMENT OF THE CASE.

This is the second appeal in this cause. The case on the former appeal is reported in 117 Va. 676, 86 S. E. 111. That appeal involved the decree of the court below entered at the November term, 1913, by which appellees were allowed certain recoveries therein set forth against W. F. Harman the appellant, being purchase money for certain timber sold by appellant to the W. M. Ritter Lumber Company under a certain agreement between appellees and others with appellant of date January 22, 1907. The provisions of that agreement appear from the record and opinion of this court on the former appeal. The decree last named allowed appellant five per cent. commissions on the part of such purchase money coming to appellees, but overruled a motion of appellant that the cause be referred to a commissioner to ascertain and report what compensation appellant was entitled to for services in making sale of said timber.

On said former appeal so much of said decree of November, 1913, as allowed said recoveries against appellant was affirmed, but such decree was amended in so far as it affected the compensation aforesaid claimed by appellant and the further claims asserted by him in his petition for rehearing of the cause on said former appeal, and the cause was, by this court, remanded to the court below with directions to it to refer the cause to a commissioner;

(1) "To ascertain what would be a reasonable compensation to W. F. Harman for making sale of the timber;"

(2) To inquire "into the claim of appellant to compensation for the value of the right of way over the forty-six-acre tract of land described in the record and which is alleged to have entered into the price paid by W. M. Ritter Lumber Company for standing timber; and"

(3) "Into the claim of appellant that the timber on his individual undivided interest in certain land acquired by

him under the will of his grandfather, Kiah Harman, deceased, also constituted a part of said purchase price."

The decree of this court added: "And if said demand shall be established, said commissioner will ascertain and report the respective amounts thereof."

The cause, upon being remanded to the court below, was proceeded in accordingly. Certain depositions were taken before the commissioner to whom the cause was referred and also before a notary, which, with certain papers, were filed as evidence before such commissioner, in addition to what was already in the record. Thereupon the commissioner reported as follows:

"First: That as to Harman's compensation for making the sale of timber, it should not be measured or governed by the customary commission of five per cent., for the reason that the sale effected by Harman does not fall within the ordinary class of sales, for which a commission of five per cent. is the usual or customary allowance. The facts and circumstances of this case are such as to take it out of the class of the ordinary real estate broker's transactions. The circumstances of this case make it just and equitable that Harman's compensation should be somewhat commensurate to the special character of the sale effected by him and to the peculiar benefits flowing to the complainants as the results of the very advantageous sale, which Harman was able to effect.

"Second: That as to the claim of Harman for compensation for the rights of way over his individual forty-six-acre tract, it is clear that Harman is entitled to a reasonable amount therefor, as there can be no doubt that these rights of way over the said private property of Harman, not only to remove what is known in the record as the Sayers timber, but also to remove other timber belonging to the purchasers, W. M. Ritter Lumber Company, together with other rights and privileges, as set forth in the deed in the

record in reference to this forty-six-acre tract, were absolutely essential and a prerequisite to the consummation of the deal and trade between Harman and said lumber company, and under all the facts and circumstances of the case, it cannot be denied that the consideration money of $49,000 represented the purchase price, which the purchaser was willing to pay, not for the Sayers timber alone, but also for the said various rights of way and other rights and privileges in respect to Harman's said forty-six-acre tract, as well as for the release by Harman to the said purchaser of his said individual claim under the will of Kiah Harman as to the seven-ninths interest, in the Sayers timber, that is, all three of these matters (the last two being the individual interest of Harman), unquestionably entered into and made up the full consideration of $49,000.00, which the purchaser was willing to pay. Without these individual interests of Harman being included by him in his deal with the Ritter Lumber Company, it is clear that no sale of the timber could have been effected, certainly not to this company.

"Third: That as to Harman's claim for compensation for the sale and release to the purchaser, as to the seven-ninths interest in the Sayers timber, of his individual undivided interest in certain land claimed by him under the will of his grandfather, Kiah Harman, it is clear for the reasons last above stated in connection with the rights of way, etc., in the forty-six-acre tract, that Harman is entitled to a reasonable amount therefor, and regardless of any question as to whether this claim of Harman to an undivided interest, under the Kiah Harman will, be in reality a valid claim or not, since it appears that this individual claim of W. F. Harman constituted at least a serious cloud upon the title to the Sayers timber and that the purchaser would not have entered into and closed the deal with Harman, unless this claim of his had been included, and it was included,

and as above stated, was one of the factors and elements, which entered into the agreed purchase money of $49,000.

"Such being the findings and conclusions of the commissioner upon the three matters arising on this accounting, the remaining question is as to the three several amounts, which should be allowed to Harman, as against the complainants, Virginia A. Moss and W. G. Moss, her husband, owning two-ninths interest in the Sayers timber, and on this question the commissioner is of the opinion and finds and reports as follows:

"(a) One thousand dollars ($1,000.00), as of December 28, 1909, to Harman from the complainants, as the amount to which Harman is entitled, at the least, under the finding third above: This being the amount, which the Ritter Lumber Company was willing to pay to Harman (who then asked $2,000.00) for Harman's adverse interest under the devise of Kiah Harman, as to the two ninths interest in the Sayers timber on the 3149 acres, purchased by the Ritter Company from the Hall Mining Company or J. D. Peery.

"(b) One thousand dollars ($1,000.00), as of December 28, 1909, to Harman from the complainants, as the amount to which Harman is entitled as a reasonable compensation, under conclusion and finding second above, for the rights and privileges in his forty-six-acre tract, sold and granted by Harman to the Ritter Lumber Company; the value of which rights and privileges in and over the forty-six-acre tract is to be measured and determined, not from the standpoint of its value as a farming proposition, but from the standpoint of its strategic and commanding location and its resulting peculiar value, and the unquestioned right of the owner thereof, in this particular case, to have a reasonable valuation placed thereon from this standpoint of its very peculiar and extraordinary value. If Harman had not included these rights and privileges in his deal with the purchaser, of course, he could have demanded and secured

from the purchaser the limit to which the purchaser or other party desiring same would be willing to go; but having included same in his deal and trade with the Ritter Company and the value thereof to the purchaser having entered into the total consideration money of $49,000.00 it is plainly right, just and equitable that Harman is entitled to reasonable compensation for the value of the said rights and privileges in and over his forty-six-acre tract, and that he is not restricted to a measure of recovery, which would allow him just the damage to his land as a farming proposition from the exercise of the rights and privileges.

"(c) Twelve hundred dollars ($1,200.00), as of December 28, 1909, to Harman from the complainants, as the amount to which Harman is entitled under conclusion and finding first above; this amount being ten per cent. of $12,000.00, which amount of $12,000.00 represents the complainants' two-ninths interest in the total consideration money of $49,000.00 (that is $14,000.00) after deducting from the said $14,000.00 the aforesaid two amounts of $1,000.00 each, allowed to Harman as the valuation of his own individual rights and interests that went into the deal and entered into the total purchase money.

"The aggregate of the three several amounts allowed to W. F. Harman as against complainants, as of December 28, 1909, is the sum of $3,200.00."

There were exceptions to this report on the part of both the appellant and appellees.

By the decree complained of on the present appeal the court below overruled all of the exceptions of appellant to said report but sustained the exception of appellee to said allowance of $1,000.00 to appellant for the one-sevenths undivided interest claimed by him under the Kiah Harman will aforesaid, the provision of such decree in this regard being as follows:

"The court is further of the opinion that it was incumbent upon the said W. F. Harman to sustain the validity of his claim to an undivided one-seventh interest in the D. G. Sayers tract of land from which the timber was sold, and offering no proof whatever of the validity of his title to said one-seventh interest, and therefore, the exception filed by the plaintiff to an allowance of $1,000.00 for this undivided one-seventh interest should be sustained, and said sum of $1,000.00 is not allowed, but in rejecting this allowance, the court allows said W. F. Harman $100.00 more on commissions than allowed by the commissioner, so as to make the allowance for commissions 10 per cent. on the net amount of sale, all of which is adjudged, ordered and decreed."

The decree complained of also allowed a recovery against appellant of the costs of the reference to said commissioner.

*Graham & Hawthorne, W. B. Kegley* and *S. M. B. Coulling,* for the appellant.

*Henson & Bowen,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the opinion of the court.

The assignments of error and cross-error before us raise the questions for our decision which will be disposed of in their order as stated below.

1. What was a reasonable compensation to appellant for his services in making the sale of timber in controversy in this cause?

We think the finding of the commissioner in favor of appellant on this question, above stated—of 10 per cent. of the share of appellees in the purchase money for said timber—allows the former a reasonable compensation for his services aforesaid, for the reason stated by the commis-

sioner quoted above.  The facts and circumstances supporting this finding sufficiently appear from the record on the former appeal, the findings of the commissioner quoted above, the further reference to facts made below, and they need not be here set forth in detail.  It is deemed sufficient here to say that this is not a case within the class of a sale by a real estate agent or broker, where the usual commissions of such an agent or broker would be the correct measure of the compensation.  Appellant did not undertake the sale as an ordinary real estate agent or broker.  That was not his undertaking with or relation to the other parties.  Further, the sale was of a special character.  Appellant's situation and qualifications for making the sale were exceptional and the benefits flowing to appellees as the result of a very advantageous sale were peculiar.  We think the compensation of appellant in question should have been fixed, as it was fixed by the commissioner, by the measure of *quantum meruit.*  On the other hand we do not think that, fixed by this measure, the compensation should have been more, as appellant contends it should be.

2. What was a reasonable compensation to appellant for the value of the right of way over the forty-six-acre tract which is alleged to have entered into the price obtained for the timber aforesaid?

We think the finding of the commissioner on this question, above quoted, of $1,000.00, is reasonable, fair and just to all parties, for the reasons given by the commissioner, also quoted above, further developed below.  We think the proper measure of compensation for the right of way was the price therefor at which appellant, under the circumstances, could reasonably have expected to sell it, in connection with the sale of his interest and the other interests which he was authorized to sell in the Sayers estate timber and in connection also with the sale of the timber on his forty-six-acre tract of land.  Measured in that way we

think the commissioner arrived at a correct valuation of such right of way as entering into and making up a part of said purchase money. We do not think that a valuation of such right of way on the basis of its salable or condemnation value, independent of its acquisition by the vendee in connection with the purchase of timber aforesaid, as contended for by appellees, would be a correct measure of such value. Nor do we think that a valuation of it on the basis of the price at which the timber in which appellees were interested would have sold in a sale made of the latter, differently from that in fact made of it, that is to say in a sale of such timber independently and separately made from the sale of the timber on the forty-six-acre tract and the right of way across the latter, etc., as contended for by appellant, would be a correct measure of such value. Both contentions ignore the fact that in the sale under consideration all of the things sold were sold together, their respective values were, therefore, naturally fixed upon by vendors and vendee relatively to each other and were inseparably affected by the advantage to the vendors of selling and the advantage to the vendee of buying all the subjects entering into the sale and purchase. It would therefore bring about a distorted and unfair result to take apart any subject entering into the sale in fact made; regard the sale as made or proposed to be made without this one subject; and then inquire what this separate subject would have been worth as a factor to defeat or to consummate the sale. This would be to ignore the real inquiry we have to make with respect to the transaction as it in fact occurred and substitute an inquiry in regard to a situation which did not in fact exist.

3. At what value did the claim of appellant that he owned a one-seventh undivided interest in certain land acquired by him under the will of his grandfather, Kiah Harman, deceased, enter into the sale of timber in question?

That this mere claim of title did enter into such sale at some valuation is clearly proved. Judge Strother, counsel for the vendee of said timber, testified positively that the vendee would not have purchased the timber without the inclusion of such claim of title in the sale of it. This being true, it was immaterial that the title claimed was not proved in this suit to be a valid claim. It constituted a cloud upon the title and its extinguishment was of some value to the vendee of the timber.

It is true the burden was upon the appellant to show by a preponderance of evidence that said cloud upon the title to the timber had some definite value, so as to enable the commissioner and court to determine upon the value of it. The proof furnished by appellant on this subject consisted of the testimony of Judge Strother, counsel for the Ritter Lumber Company, as aforesaid, taken by said commissioner. He testified positively that in the early part of 1909 his said company had an option from appellant to purchase the said claim of title, constituting said cloud upon said title, at the price of $1,000.00 and that such company was then willing to pay that sum for it, in order to extinguish it, had it then been able to make the purchase of timber aforesaid which it afterwards made; but that when the option agreement of November 10, 1909, was made, which covered the aforesaid sale of timber afterwards consummated, the $1,000.00 option above referred to had expired and appellant then asked $2,000.00 to extinguish such cloud upon the title. Judge Strother testified that his company was not willing to pay $2,000.00 to extinguish such cloud on the title. He adds, in answer to another question, "I don't recall at this time whether at that time," (November 1909) "we made him an offer of $1,000.00 or not, but I am under the impression we were willing to carry out the original agreement with reference to that interest, and when Mr. Harman raised the price to $2,000.00, we declined to

52

purchase." We consider that the whole of this testimony satisfactorily establishes the fact that the said vendee of the timber sold as aforesaid, would have paid $1,000.00 for said cloud upon the title to such timber in order to extinguish it, had the latter been sold to it separately at the time the timber was sold to it. This proves in a most satisfactory way a definite selling value of such cloud upon the title at the very time in question and sustains the burden of proof which rested upon the appellant on this subject.

4. Should appellant have been denied all compensation for his services in making sale of said timber?

Appellees on cross-assignment of error make this claim, under the well settled rule that a broker or agent guilty of bad faith to his principal forfeits all commissions or compensation for his services.

As we have above seen, this case does not fall within the class of cases relied on by appellant. Under appellant's *bona fide* construction of the contract with appellees, under which he made the sale of timber in question, he believed that he occupied the relation of an optionee purchaser and had the right to resell the timber and retain all of the purchase money over and above $10.00 per acre for the timber. In view of this situation and of the further fact that the vendee had an interest not to have the records disclose the true consideration for the purchase of the timber and other subjects of said sale, the conclusion that appellant was guilty of fraud and deception towards appellees does not follow from the fact that the papers recorded in connection therewith did not disclose the true consideration for such sales. Even with respect to the fact that appellant induced appellees to unite in the deed to said vendee by the representations that appellant sold the timber for $10.00 per acre and that that was the best price he could get for it and was the amount that he and his wife were to receive, while not a frank statement and not to be

commended, was one which appellant could have made consistently with his position, which seems to have been *bona fide* on his part. This position of appellant, as appears from the record on this and the former appeal, was that his personal services; money expended; the true value of the timber, his own forty-six-acre tract of land; the said right of way over the latter; the said claim of title derived from his grandfather; his personal undertaking to guarantee to the vendeed the passing to it of the interest of one of the parties to the contract, first above mentioned, who was an infant; his personal agreement to save the vendee harmless from any claim of damages by the infant on attaining lawful age and the giving up by appellant of his right to purchase at $10.00 per acre the timber sold, which was fifteen inches and over in diameter included in said sale, but to which he was entitled under a lease of the coal with certain timber rights, of date April 18, 1908, from appellees and others, were worth all the purchase money over and above $10.00 per acre which the said vendee was to pay in the transaction of the sale to it of the timber, etc., in controversy in this suit. That is to say, appellant's *bona fide* claim all along seems to have been that said timber itself sold for only $10.00 per acre.

Moreover, the bill in this cause did not make any issue that appellant was not entitled to any commissions or compensation for his services aforesaid. On the contrary the bill expressly stated that appellant was entitled to "reasonable commissions." The issue that appellant should be denied all compensation for his services not having been made in the pleadings or in the court below, it cannot be made by assignment of error in this court.

5. Should the costs of the reference to the commissioner in the court below have been decreed against the appellant?

In view of the respective contentions of the parties before the commissioner, we are of the opinion that the ap-

pellees substantially prevailed in the result of that inquiry and we think there was no error in the adjudication of the court below of the costs under consideration against the appellant.

For the foregoing reasons we are of opinion to amend and correct the decree complained of on the subject of the disallowance to appellant of the $1,000.00 for his claim of title aforesaid derived from his grandfather and the consequential allowance of $100.00 to appellant on commissions more than was allowed by the report of said commissioner; and with these corrections and amendments such decree will be affirmed, with costs against the appellees.

*Amended and affirmed.*