# Richmond

R. A. MORISON, ET AL. V. DOMINION NATIONAL BANK
OF BRISTOL.

February 20, 1939.

Record No. 2029.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Eggleston and Spratley, JJ.

The opinion states the case.

*William A. Stuart, H. E. Widener* and *Donald T. Stant,* for the appellants.

*Henry Roberts, Stuart Carter* and *Leonard R. Hall,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

Dr. R. A. Morison instituted this suit, alleging that he delivered to the Dominion National Bank of Bristol twenty-five shares of stock of the Erwin Feldspar Company, Inc., as collateral to secure the payment of his note for $2,300, held by the bank; and that, notwithstanding the fact that the bank, from time to time, had accepted renewal notes for this obligation, with payment of interest in advance and some payment on principal, it had, without his knowledge or consent, converted the stock to its own use. The prayer was to ascertain what disposition the bank had made of the stock, the amount of dividends paid thereon, and to compel the bank to credit the note with the amount of dividends received and with the value of the stock, if it was ascertained that the stock had been unlawfully converted.

The answer and cross-bill denied the material allegations. On the evidence taken to support the issues, the trial court held that there had been no conversion of the stock and dismissed the suit. On appeal (See *Morison, et al.* v. *Dominion Nat. Bank,* 169 Va. 191, 192 S. E. 707) it was held by a divided court (five to two) that the stock had been unlawfully converted to the use of the bank. The decree of the trial court was reversed, and the case remanded with directions to the lower court to ascertain the value of the stock

at the time of conversion, the amount of dividends paid prior to conversion, and to give credit accordingly. On the hearing pursuant to the remand, the trial court decreed that it was confined to the value of the stock on the day of its conversion and awarded all costs in the lower court to the defendant bank. It is from this decree that complainant in the original bill obtained this appeal.

■ The fundamental error committed by the trial court is the method which it pursued in ascertaining the measure of damages. It construed a general statement in the former opinion to confine the inquiry in the lower court to the value of the stock as of the date of conversion. The correct rule, and the one enforced by this court for more than a quarter of a century, is to ascertain the highest market value of stock unlawfully converted by a pledgee between the date of conversion and a reasonable time after the owner has received notice of it. *Miller & Co.* v. *Lyons*, 113 Va. 275, 74 S. E. 194; *Virginia Public Service Co.* v. *Steindler*, 166 Va. 686, 187 S. E. 353, 105 A. L. R. 1413. After this highest intermediate value within the time stated is determined, credit is given as of the date of conversion.

The question now presented is whether this court, in its former opinion, changed this well-established rule by the following statement: "Complainant is entitled to have the proceeds of this collateral applied upon his indebtedness as of the date of its conversion, if it has been converted, or rather to have its value as of the date of said conversion so applied together with any dividends which the bank may have collected on it."

■ This statement must be construed in the light of the issues then before the court. In the former petition for appeal there were nine assignments of error. Each assignment, in some form, raised the single question—whether there had been an unlawful conversion of the stock and the dividends declared thereon. Six hundred pages of evidence and thirty lengthy exhibits were introduced on this one issue. Three briefs were filed in this court discussing that issue and the different principles of law applicable to vary-

ing phases of the evidence, but the rule as to the measure of damages was not mentioned in the three briefs. The former opinion is responsive to the issues discussed. It analyzed the evidence at some length, as well as the rules by which such evidence should be weighed in the appellate court. After having done this, it stated the conclusion of the majority. In order to give each litigant an opportunity to introduce evidence and be heard on the time of conversion and the amount of damages, the case was remanded with directions.

Interpreting the language of the opinion quoted in the light of the questions discussed in the briefs and the opinion itself, it is clear that this court did not intend to overrule or modify the established rule used to ascertain damages where a pledgee had unlawfully converted stock to its own use.

In *Virginia Railway & Power Co.* v. *Dressler,* 132 Va. 342, 111 S. E. 243, 245, 22 A. L. R. 301, Judge Burks quotes with approval Chief Justice John Marshall, in *Cohens* v. *Virginia,* 6 Wheat. (U. S.) 264, 399, 5 L. Ed. 257, as follows: "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, *when the very point is presented for decision.* The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." (Italics supplied.)

In 3 Am. Jur. 551, this is said: "A dictum of the reviewing court is not within the rule of the law of the case on a subsequent appeal, and therefore is not conclusive; but decisions on the prior appeal, though not necessary to the disposition of the appeal, do not fall within the rule as to dicta if they were fully urged and considered. It

also seems that the doctrine of the law of the case is not applicable to statements which, though not obiter in a strict sense, are closely allied thereto, such as statements casually made as to other portions of the case not under consideration at the time they are made."

█ By the language used the court meant (for) the trial judge to apply the usual method to ascertain the value of the stock, and, after having ascertained that value, to give credit to the pledgor as of the date of conversion. Any other interpretation will overrule, without discussion or consideration, a fair and well-established principle which has been consistently applied in this Commonwealth for many years.

█ Since the trial court used the wrong yardstick in determining the measure of damages, its finding that the value of the stock on the day of conversion was $40 per share must be disregarded.

The principles of the case having been determined by the prior decision, we now turn to the evidence to determine the date of the conversion and the highest intermediate value of the stock between that date and a reasonable time after notice was received by appellant.

When the case was called for hearing in the lower court pursuant to the remand, the parties agreed that November 23, 1929, was the date of the conversion. It appears from the evidence that notice of the conversion was received by appellant in October, 1930. These dates being fixed, two questions remained to be determined—one, what is a reasonable time after October, 1930; and, two, what was the highest intermediate value of the stock during the interval.

Sometime prior to 1929 the Erwin Feldspar Company had issued $450,000 in preferred stock of the par value of $100. One H. P. Margerum, who, with his associates, controlled the Erwin Feldspar Company and several allied corporations, decided that it would be profitable to merge these corporations into one parent company, known as the Consolidated Feldspar Corporation.

Each stockholder in the Erwin Feldspar Company was urged to exchange his stock for stock in the Consolidated Feldspar Corporation. The negotiations, with this end in view, were somewhat extended. By the end of 1929 all of the 4,500 shares of the Erwin Feldspar Company, except 692½ shares, had been exchanged for stock in the Consolidated Feldspar Corporation. The majority of this minority block of stock was represented by Pates and Pence, who refused to make the exchange and demanded that this stock be retired at $105 per share in accordance with a retirement scheme set forth in the charter of the Erwin Feldspar Company. For some fifteen months after 1929, there seemed to have been a deadlock between the two factions—at least there is no evidence of any sale of the stock until April, 1931, when through Pates and Pence, the entire block of 692½ shares of Erwin stock was sold to representatives of the merger at $80 per share. In order to make delivery of all this minority block of stock, Pates and Pence were compelled to buy twenty shares from John W. Flannagan at $100 per share. On these twenty shares Pates and Pence sustained a loss of $400, or $20 per share.

Sometime in 1928 or early 1929 a block of this stock was sold and bought at public auction, for $40 per share, by the Unaka Bank of Johnson City, Tennessee. The proceeds of this sale were used to discharge a note held by the bank. Later the makers of the note offered to re-purchase the shares at $40 per share, but the bank refused to accept less than $80 a share. The sale at auction was prior to the date of conversion. The offer to re-purchase seems to have been made after the date of conversion, but the actual date of the offer does not appear in the record.

What is a reasonable time after receipt of notice of conversion is dependent upon the facts of the particular case. See *Miller & Co.* v. *Lyons, supra,* and cases cited; *Newburger Cotton Co.* v. *Stevens,* 167 Ark. 257, 267 S. W. 777, 40 A. L. R. 1279, and note; and *Miller* v. *Tidal Oil Company,* 161 Okl. 155, 17 P. (2d) 967, 87 A. L. R. 811, and note. The theory upon which the rule is based is to

give the owner a fair and reasonable opportunity to purchase the stock after he has received notice of conversion. The peculiar facts, as set forth, clearly show that there was no general sale of the stock between November 23, 1929, and April 1, 1931. Under these circumstances, a reasonable time after notice includes the time of the sale of the minority block to the representatives of the merger agreement.

Several witnesses introduced by defendant bank testified that in their opinion the value of the stock in question was from $15 to $25 per share. This opinion was based upon the value of the tangible assets owned by the corporation. Other witnesses testified that prior to 1929 there had been a number of sales of the stock at $80 per share. The corporation seems to have been prosperous—at least substantial dividends were earned and declared. But, after the majority of the stockholders had agreed to merge the Erwin Feldspar Company into the parent corporation, the line between the majority and the minority stockholders was sharply drawn. Mr. Margerum and several of his associates testified that the stock was not worth $80 per share, and that they paid that amount for it in order to carry out the terms of their agreement with the allied concerns. Frequently, the market value of stock is enhanced by the desire of some interests to obtain control of the corporation. At least, the stock was owned by the pledgor and he had a right to agree to merge his stock or to decline to do so. As the defendant bank unlawfully converted his stock to its own use this right was denied the owner.

It is true that there was one sale of this stock at $100 per share within the interval stated. This isolated instance should not be the sole criterion by which the value of this stock is determined. On the whole we think that the value of the stock in question at the price of the sale of the minority block, at $80 per share, is fair, and well within the rule.

Appellant contends that he is entitled to a bonus and dividends paid to the bank on the stock after the date of conversion. The trial court found, and we think cor-

rectly, that appellant was entitled to the dividends declared on this stock prior to November 23, 1929, but, inasmuch as he has elected to claim damages for the wrongful conversion, he is not entitled to the proceeds of the stock or any of the dividends declared after the date of conversion.

While two members of this court, including the writer of this opinion, did not think that appellant had established a conversion of his stock, the majority were of a different opinion and held that the conversion was established. However, the opinion of the majority is binding upon the minority members of this court, as it is upon all others within the Commonwealth. Under the majority holding, appellant was compelled to bring this suit to enforce his legal and equitable rights, as the defendant bank had denied his claim to the stock or its dividends. After some eight years of litigation he has substantially prevailed in all of his contentions. For this reason he is entitled to recover all costs by him in this behalf expended.

We find that R. A. Morison, the appellant, is entitled to credit as of November 23, 1929, in the sum of $2,000, the value, as determined, of twenty-five shares of Erwin Feldspar Company preferred stock. In addition, he is entitled to four dividends of equal amount; that is, $43.75, paid October 2, 1928; January 2, 1929; April 2, 1929; and July 1, 1929. The bank is entitled to recover from R. A. Morison the amount of his note, $1,675. Inasmuch as it appears that he has paid interest on this note to November 1, 1930, interest should be calculated on the $2,000 from November 23, 1929, to November 1, 1930; and likewise on the dividends from the dates of their respective payments to the bank until November 1, 1930. Deducting these sums with the proper calculations of interest leaves the bank indebted to R. A. Morison in the sum of $630.57 as of November 1, 1930, and a final decree so declaring will be here entered.

*Reversed and final decree.*