# Richmond

GEORGE T. McLEAN, ET AL. V. FORREST H. HILL, ET ALS.

June 10, 1946.

Record No. 3035.

Present, All the Justices.

The opinion states the case.

*William G. Maupin,* for the appellants.

*H. M. Woodward, William L. Parker* and *Semmes Chapman,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

In 1941, Percival Hall and Forrest H. Hill formed the Hydraulic & Gas Engineering Corporation which was chartered and organized under the laws of Delaware and later domesticated in Virginia. There was a paid-up capital stock of ten shares, of $100 each, of which Hall originally owned eight shares, Hill one share, and Mrs. Hazel W. Rudisill (now Mrs. Percival Hall) one share. Later, Hall transferred

four of his shares to Hill who thus became the owner of 50% of the stock, while Mr. and Mrs. Hall owned the other 50%. Hall was president, Hill vice-president, and subsequently Semmes Chapman, a member of the Norfolk Bar, was elected "secretary-treasurer, office and credit manager, director of finance and general accountant." Hall, Hill, Mrs. Hall, and Chapman constituted the board of directors.

In June, 1942, the corporation was awarded a contract by the United States Government to install a liquefied petroleum gas system in a housing project then under construction near Newport News, for the sum of approximately $352,000, subject, however, to the execution of a completion bond in the sum of $176,000. Since the corporation had little assets it was unable to procure this bond and carry out the contract without financial help. For this purpose it sought and obtained the assistance of George T. McLean and Nicholas C. Wright who agreed to lend their credit to the corporation upon the consideration that they be paid 33% of the net profits derived from the contract. That McLean and Wright fully performed their obligation under this contract is conceded by all parties. They indemnified the surety company which executed the performance bond, and from time to time loaned their credit to the corporation for the purpose of obtaining the necessary funds to carry out the contract.

In order to protect their interests McLean and Wright required the corporation to deposit all moneys to its credit in a special account in the Seaboard Citizens National Bank of Norfolk, and to disburse the same by checks countersigned by one of them or their designated agents.

About May 1, 1943, the construction contract was completed, by which time a serious controversy had arisen between Hill and Chapman, on the one hand, and Hall on the other, as to the payment of certain claims which each had against the corporation. Moreover, Hill and Chapman contended that Hall had made certain unauthorized withdrawals from the corporation's funds.

On May 20, 1943, Hill filed a bill in equity against Hall, McLean, Wright, and the corporation for an accounting of

the moneys received and disbursed on account of the contract. Although the bill disclaimed any purpose of the complainant to try out in his suit any controversy as to the amount due McLean and Wright, and although the auditors employed by the corporation had tentatively ascertained and fixed the net profits derived from the construction contract, Hill obtained an injunction enjoining the further withdrawal of any of the corporation's funds from the bank pending the settlement of the controversy between himself, Hall, and Chapman. The effect of this injunction was, of course, to prevent the payment to McLean and Wright of their share of the profits derived from the construction project.

On June 9, 1943, McLean and Wright filed their answer and cross-bill in which they alleged that the construction contract had been completed, and that but for the payment of some small bills and the disposal of certain surplus property, the profits derived from the project could be ascertained and divided. They prayed for an accounting of the moneys received from the project, and that their share of the profits, which they alleged was "in excess of $20,000," be ascertained and paid to them.

When the necessary pleadings had been completed the matter was referred to a special master, who, after a lengthy hearing, filed a comprehensive report settling the various claims presented by the several parties. With the adjustment of a minor item, which is not here material, the court confirmed this report *in toto*, and its disposition of the merits of the controversy is not here assailed. Indeed, except for the retention in the registry of the court of a small amount, deducted from Hill's distributive share, to cover the items involved in this appeal, the fund in controversy has been disbursed.

The lower court held that the costs of the suit, amounting to $5,398.70, should be charged against the respective parties in the following proportions: 33 1/3% against McLean and Wright, 33 1/3% against Hall, and 33 1/3% against Hill.

McLean and Wright, in their petition for appeal, and Hall,

in his assignment of cross-error, contend that they substantially prevailed in the lower court both in the prosecution of their respective claims and in their efforts to reduce the amounts asserted by Hill and Chapman, and for that reason should not have been required to pay any part of the costs of the litigation.

An analysis of the claims presented by the several parties and the lower court's disposition of each clearly demonstrates the soundness of this contention.

As has been said, McLean and Wright alleged in their cross-bill that their 33% of the profits was "in excess of $20,000." Hall did not contest this figure, but Hill and Chapman vigorously assailed it, claiming that the amount due was only $7,256.85. The master found that McLean and Wright were entitled to $21,036.76, which was substantially what they claimed. The lower court confirmed this finding.

Hall presented a claim against the corporation for the balance of accrued salary due him and for certain advances made by him for the benefit of the corporation. Hill and Chapman claimed that Hall should be charged with certain items to cover what they said were unauthorized disbursements by Hall from the corporation's funds, and which would have reduced the amount due him to $4,101.69. These disputed items were decided by the special master in favor of Hall, with the result that he received under the report and final decree $10,318.94.

Before the master, Hill contended that he was entitled to $34,939.69. Included in his claim was a promotion fee of $17,931.87, representing 5% of the amount of the government contract, which was disallowed *in toto*. He was finally allowed the sum of $14,947.70.

Chapman presented a claim against the corporation of $12,066.50 for services rendered. Against this he was allowed by the master and lower court the sum of $5,348.88.

This is not the ordinary case where the costs should have come out of the fund in controversy and thus been divided among the litigants in proportion to the amounts recovered

by each. In effect, the respective litigants made cross-claims against each other. McLean and Wright contended that their share of the profits from the government contract was a certain amount. Hill was interested in reducing the amount of this claim, because as the holder of one-half of the capital stock of the corporation he was entitled to one-half of the surplus.

For the same reason Hill was interested in reducing the claim which Hall had against the corporation. The less expense the corporation had to pay, the larger was the surplus in which Hill would share.

On the other hand, since McLean's and Wright's 33% of the net profits derived from the project depended upon what items of expense were properly chargeable to the project, they were naturally interested in reducing the claims of both Hill and Chapman.

In this contest, in which Hall seems to have made common cause with McLean and Wright, while Hill sided with Chapman, the first three turned out to be the winners, and the latter two the losers.

■ It is true that generally speaking a court of equity has discretion "over the subject of costs." Code, sec. 3527. But such discretion must be exercised soundly and in the light of the result obtained in the litigation by the respective parties. We have several times said that in the exercise of this discretion the chancellor should award costs in favor of the party or parties "substantially prevailing." *Adkins* v. *Edwards*, 83 Va. 300, 307, 2 S. E. 435; *Harman* v. *Moss*, 121 Va. 399, 411, 412, 93 S. E. 609.

See also, *Peters* v. *Waverly Water-Front Improv., etc., Co.*, 113 Va. 318, 325, 74 S. E. 168; *Williams* v. *Bond*, 120 Va. 678, 689, 91 S. E. 627; *Morison* v. *Dominion Nat. Bank*, 172 Va. 293, 303, 1 S. E. (2d) 292, 295, in which decrees of the lower court were modified or reversed because costs had not been awarded in accordance with this principle.

■ For these reasons we are of opinion that the lower court erred in requiring either McLean and Wright, or Hall, to pay any part of the costs.

McLean and Wright and Hall next contend that they should have been allowed interest on their respective claims from September 7, 1943, the date of the receipt by the corporation of the final payment under the government contract, to March 30, 1945, the date of the decree of distribution. The argument is that but for the institution of the original suit by Hill, and the immobilization of the fund in bank by the injunction granted at his request, the money would have been distributed at an earlier date.

We cannot agree with this contention. It is true that the injunction granted at the request of Hill tied up the fund and prevented its distribution at that time. But the liquidation of the claim of McLean and Wright was the main purpose of their own cross-bill. They sought and obtained an accounting of the amount due them. Moreover, the amount of the net profits derived from the project, and their portion thereof, could not be fixed until after the court had ascertained what amounts were deductible as legitimate expenses on the respective claims of Hill, Hall, and Chapman. Not until the entry of the decree which confirmed the master's report and distributed the fund was the amount due McLean and Wright fixed.

We also agree with the holding of the lower court that Hall was not entitled to interest on his claim. A determination of his share in the corporation's assets was one of the main questions involved in the original suit filed by Hill. This, too, was not settled until the entry of the decree of distribution.

Furthermore, pending the settlement of these various claims, the money was in bank to the credit of the corporation and Hill had no use of it. Why, then, should he be required to pay interest on it?

For the reasons stated the decree appealed from will be reversed in part and affirmed in part. The cause will be remanded to the lower court for the payment of costs out of the fund reserved in the registry of the court for that purpose.

McLean and Wright and Hall having substantially prevailed on this appeal will recover their costs of the appellee, Forrest H. Hill.

*Reversed in part.*
*Affirmed in part.*

CAMPBELL, C. J., dissenting.

I am unable to concur in the conclusion of the majority opinion in regard to the question of costs.

This case is before us on an appeal from a decree entered by the Court of Law and Chancery of the city of Norfolk. The decree settled *in toto* the merits of the case and this action of the chancellor is not challenged in any particular.

A sufficient statement of the case, as shown by the report of the commissioner appointed by the court, is this:

Percival Hall and Forrest H. Hill, during the latter part of 1941, decided to form a corporation to be known as Hydraulic and Gas Engineering Corporation, and on December 29, 1941, its charter was granted by the State of Delaware. On January 19, 1942, the corporation was domesticated in the State of Virginia. A total of ten shares of stock of the par value of $100 were issued, of which Percival Hall received 8 shares, Forrest H. Hill 1 share and Mrs. Hazel W. Rudisill (now Mrs. Percival Hall) 1 share. Percival Hall paid the corporation $1,000 in cash for the 10 shares issued as aforesaid.

On January 19, 1942, Hall was elected president, Hill was elected vice-president and Semmes Chapman was elected secretary and treasurer of the corporation. The principal purpose of the formation of the corporation was to engage in the business of constructing and installing gas systems and equipment for the United States government in the Defense Housing Project in the area near the city of Newport News, Virginia.

On June 25, 1942, the corporation entered into a contract with the government to construct the necessary units required in the installation of the houses being built. Being in need of financial and other assistance, the corporation entered into a contract with George T. McLean and Nicholas C. Wright, to secure a line of credit of $75,000 or more, in order to procure materials and labor. McLean and Wright, through negotiations with the Seaboard National Bank of Norfolk, Virginia, secured the necessary funds which were deposited in that bank. (The bank has no interest in the outcome of the present controversy and is only a nominal party as the holder of certain funds claimed by the litigants.)

After the completion of the contract between the corporation and the government, a controversy arose between Hall and Hill over a division of the proceeds.

On May 20, 1943, Hill filed his bill in chancery against Hall, McLean, Wright and others, the primary object of the suit being to enjoin Hall from issuing checks against the funds held by the bank and from disposing of any of the personal property of the corporation. In this bill it is specifically set forth that McLean, Wright and the Seaboard National Bank are made parties thereto "solely because of their interest in these proceedings and without intending at this time to litigate any rights or controversies arising between complainant and such parties."

Appellants filed their answer to the bill of complaint and, in addition thereto, filed a cross-bill seeking an accounting between Hydraulic and Gas Engineering Corporation and complainants for the purpose of ascertaining the amount due them by the corporation. A temporary injunction was decreed to Hill by the court.

A commissioner was appointed to take an account and upon final adjudication, the court entered a decree confirming the report of C. Dodson Morrisette, commissioner, based upon the merits, and also confirmed the report in regard to the apportionment of costs.

As stated, the decree settling the case on the merits is unchallenged. In the decree entered by the court it is adjudged that the costs of this litigation should be borne by the respective litigants in this order: McLean and Wright, 33⅓ per cent. thereof; Percival Hall, 33⅓ per cent. thereof; and Forrest H. Hill, 33⅓ per cent. thereof, which respective amounts should be deducted from the amount adjudged to be due each litigant. The total amount of costs assessed against McLean and Wright was $1,799.57. The amount assessed against Hall was $1,826.83.

This action of the court is assigned as error by McLean, Wright and Hall.

The general rule in Virginia applicable to the taxation of costs is that the party litigant substantially prevailing in the litigation should recover of the losing litigant the amount expended in and about the prosecution of his interests in the litigation. However, to this general rule there are well recognized exceptions.

Section 3527 of Michie's Code provides: "The laws of costs shall not be interpreted as penal laws; nor shall anything in this chapter take away or abridge the discretion of a court of equity over the subject of costs, * * * * ." (Code 1887, sec. 3547.)

In *Wimbish* v. *Blanks*, 76 Va. 365, this is said: "When this court has determined that the decree of the lower court is right upon the merits, it is not much inclined to interfere with the decision with respect to the costs, unless in a case of palpable error."

To the same effect is our decision in *Dillard* v. *Dillard*, 77 Va. 820.

In *Goodloe* v. *Woods*, 115 Va. 540, 80 S. E. 108, we held: "That costs are in the discretion of the court cannot be questioned, and its action will not be reversed except upon a clear showing of abuse."

A similar rule is announced in *Goins* v. *Garber*, 131 Va. 59, 108 S. E. 868.

It is to be emphasized that the original bill of complaint was filed for the purpose of enjoining Hall from withdraw-

ing funds of the corporation from the Seaboard National Bank. In the contract entered into by McLean and Wright with the corporation, there was a provision that any controversy in regard to the question of costs pertaining to the operation could be arbitrated.

It is further disclosed by the record that appellees were willing that there should be a partial distribution of the funds in bank among the parties. This offer was declined by McLean and Wright and as a result the cross-bill was filed and an accounting prayed for.

In conformity with the prayer of the cross-bill, the court referred the matter to Commissioner Morrisette. The hearing before the commissioner consumed twenty-one days. A transcript of the testimony consisted of 1,656 pages and the stenographer's bill amounted to $1,890.12. In addition to these charges, the court allowed the commissioner a most liberal fee for taking the account.

In my opinion the issues might well have been limited to the issues involved in the original suit. This view is fortified by the fact that no exception was taken by either party to the decree determining the cause upon the merits.

In my view the assignment of error is without merit for the reason that there has been no abuse of the discretion vested in the court by its entry of the decree complained of.