COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Coleman and Lemons*
Argued at Richmond, Virginia


SHARON LUANNE WALKER

MEMORANDUM OPINION** BY
v.    Record No. 1872-99-2        JUDGE SAM W. COLEMAN III
                                   JULY 11, 2000
CHARLES R. PFEIFFER


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

Lori A. Rinaldi (Bruce E. Arkema; Cantor,
Arkema & Edmonds, P.C., on briefs), for
appellant.

S. Keith Barker (S. Keith Barker, P.C., on
brief), for appellee.


This appeal involves the construction and enforcement of a
covenant in the parties' Separation and Property Settlement
Agreement dealing with their jointly-owned time share. The
covenant concerned how the parties would pay and be responsible
for the mortgage on the time share and how they would ultimately
liquidate the property and distribute the assets. The pertinent
provision of the Agreement provided as follows:

---

* Justice Lemons participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

** Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

The parties agree that the Voyager Beach Club time share financed by loan account no. 2500202-0070 will be listed and sold by them for $9,000.00, and any net proceeds or shortfall will be income or funded by wife solely, and she agrees to save and hold harmless husband for any liability on any loan or advance of monies for the purchase or financing of the payment of the time share. Husband will make the monthly payments on the time share and any annual assessments, from the date of this agreement; the parties agree that while the time share is being marketed it shall be rented by the Voyager Beach Club management and the proceeds shall be applied by them toward the monthly payments which accrue after this agreement or shall be the property of husband in an amount not to exceed the monthly payments on the time share he has paid, and the balance of any excess beyond what husband has so paid, if any, shall be the property of the wife.

The trial court construed the covenant to require that Sharon Luanne Walker, the former wife, reimburse Charles R. Pfeiffer, her former husband, $4,872.58 for mortgage payments he made on the time share plus interest at the statutory rate from January 2, 1996, plus costs. The court further ordered that the parties list the time share for sale for $9,000, "or for such other amount as they may agree." The court denied Pfeiffer's request for reimbursement of the payment for the annual assessments on the time share and denied both parties' requests for attorney's fees.

On appeal, Walker argues that the trial court erred in: (1) determining that it had jurisdiction; (2) ordering her to

reimburse Pfeiffer $4,872.58 for mortgage payments he made; (3) ordering her to pay interest on the sum from January 2, 1996, and costs; and (4) ordering the parties to sell the time share for $9,000 or "for such other amount as they may agree."  Pfeiffer cross-appeals, arguing that the court erred by failing to order Walker to reimburse him for the annual assessments paid on the time share and by failing to order Walker to pay attorney's fees.

We find that the trial court retained jurisdiction and that the "save and hold harmless" clause is unambiguous and requires Walker to reimburse Pfeiffer for mortgage payments made on the time share.  We further find that the "save and hold harmless" clause does not require Walker to reimburse Pfeiffer for the annual assessments he made.  We also find that the award of prejudgment interest and costs and the denial of attorney's fees was not an abuse of discretion.  Accordingly, we affirm the foregoing rulings of the trial court construing the separation agreement.  However, we find that the trial court erred by construing the covenant to require that the parties list the time share for sale "for such other amount as they may agree," and we reverse and vacate that portion of the order.

## I.  BACKGROUND

The parties were divorced by decree dated October 17, 1990, that affirmed, ratified, and incorporated the Separation and

Property Settlement Agreement which included the foregoing covenant concerning the Voyager Beach Club time share.

From 1990 through 1999, the time share was never listed for sale. In 1999, Pfeiffer filed a motion to hold Walker in contempt of court for failure to comply with the provision in the separation agreement to "save and hold harmless [Pfeiffer] for any liability on any loan or advance of monies for the purchase or financing of the payment of the time share" and the provision that purportedly required her to market and sell the time share. Walker responded, asserting that the court lacked jurisdiction because the divorce decree was final and any further construction or enforcement of the Separation Agreement was not a part of the divorce action.

After a hearing, the trial judge found that the court retained jurisdiction to enforce the order by a contempt proceeding, which required the court to construe the separation agreement. The court ruled, however, that Walker was not in contempt of the court's order. The trial judge found that although the terms of the agreement required that the time share be listed and sold, Walker did not bear sole responsibility for the default in having the property sold. The court further held that the provision in the separation agreement was unambiguous and obligated Walker to reimburse Pfeiffer for the mortgage payments he had made on the time share after the divorce decree was

entered. Walker argued that the covenant only required her to pay or be responsible for any outstanding mortgage payments or balance owing when the time share was sold, which was when she would be entitled to "the balance of any excess beyond what husband has so paid." The trial judge found that, under the terms of the agreement, Pfeiffer was not entitled to reimbursement of the annual fees paid by him for the time share. The trial judge ordered that the parties list the time share for sale for $9,000, or "for such other amount as they may agree which is reasonably calculated to produce a sale." The trial court denied both parties' requests for attorney's fees.

## II. ANALYSIS

### A. Jurisdiction

Walker asserts that although the court retains jurisdiction to enforce its decrees, the court lacked jurisdiction to interpret and amend the separation agreement. Walker argues that Rule 1:1 bars the trial court from amending or modifying the separation agreement because more than twenty-one days have elapsed after the final divorce decree was entered.

It is well settled that court orders become final twenty-one days after entry. See Rule 1:1. However, a trial court retains jurisdiction to construe and enforce a final divorce decree that has incorporated a property settlement and separation agreement. See Gloth v. Gloth, 154 Va. 511, 548-51, 153 S.E. 879, 891-92

- 5 -

(1930) (stating that a trial court has jurisdiction in a divorce suit to enforce the terms of a settlement agreement when it incorporates them in its decree); see also McLoughlin v. McLoughlin, 211 Va. 365, 368, 177 S.E.2d 781, 783 (1970) (stating that prior to the enactment of Code § 20-109.1, the incorporation of a settlement agreement "meant the court could use its contempt power to enforce the agreement"); Casilear v. Casilear, 168 Va. 46, 55, 190 S.E. 314, 316-17 (1937) (stating that a trial court retains jurisdiction after a final decree of divorce to enforce agreements between the parties).  The Supreme Court stated in McLoughlin, 211 Va. at 368 n.1, 177 S.E.2d at 783 n.1, that a divorce court may incorporate a property settlement agreement in a final divorce decree and may thereafter construe and enforce the decree through its contempt power and the enactment of Code § 20-109.1 merely facilitated the existing power of a court to enforce an incorporated agreement.  Accordingly, we find that the trial court had jurisdiction to enforce the separation agreement.

### B.  Separation Agreement

### 1.  Reimbursement for Mortgage Payments

We next consider whether the trial court erred by requiring Walker to reimburse Pfeiffer for the mortgage payments he had made on the time share.  Walker argues that the provision that she "agrees to save and hold harmless husband for any liability on any loan or advance of monies for the purchase or financing of

the payment of the time share" does not require that she reimburse Pfeiffer for the mortgage payments he had made on the time share. Rather, she contends that the provision requires only that she hold Pfeiffer harmless for any liability remaining on the loan when the time share is sold. We disagree.

"Property settlement agreements are contracts; therefore, we must apply the same rules of interpretation applicable to contracts generally." Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985). "Where the agreement is plain and unambiguous in its terms, the rights of the parties are to be determined from the terms of the agreement and the court may not impose an obligation not found in the agreement itself." Jones v. Jones, 19 Va. App. 265, 268-69, 450 S.E.2d 762, 764 (1994) (citation omitted). "A contract term is not ambiguous merely because the parties disagree as to the term's meaning." Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 267 (1997). "The question of whether a writing is ambiguous is not one of fact but of law." Langman v. Alumni Ass'n of the Univ. of Virginia, 247 Va. 491, 498, 442 S.E.2d 669, 674 (1994) (citation omitted). "Thus, we are not bound by the trial court's conclusions on this issue, and we are permitted the same opportunity as the trial court to consider the contract provisions." Tuomala v. Regent University, 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996) (citations omitted).

We hold that the phrase, "and [Walker] agrees to save and hold harmless [Pfeiffer] for any liability on any loan or advance of monies for the purchase or financing of the payment of the time share[,]" is not ambiguous. Because no ambiguity in the terms of the agreement exists, "we are not at liberty to search for the meaning of the provisions beyond the pertinent instrument itself." Smith v. Smith, 3 Va. App. 510, 514, 351 S.E.2d 593, 596 (1986) (citations omitted). The language of the covenant requires that Walker will reimburse Pfeiffer for payments he made on the loan for the purchase or financing of the time share. The language expressly provides that Walker will "save and hold harmless" Pfeiffer for "any liability on any loan or advance of monies for the purchase or financing of the payment of the time share." The purpose of the provision is clear. The wife would receive the proceeds from the sale of the time share; however, she would be required to reimburse Pfeiffer or "save and hold [him] harmless" for any mortgage payments that he had made on the property. Nothing in the language of the "save and hold harmless" clause requires that Pfeiffer wait until the property is sold to recover or seek reimbursement for the mortgage payments. Thus, the trial court did not err by construing the agreement to require Walker to reimburse Pfeiffer $4,872.58, the amount Pfeiffer had expended in mortgage payments, less the amount of rent received.

## 2.  Interest and Costs

Walker argues that the trial court erred in assessing interest on the judgment amount from January 2, 1996, and erred in assessing court costs.  She contends the separation agreement does not provide for payment of interest or costs and that January 2, 1996 is an arbitrary date, which has no relation to the events in this case.  She argues that in the absence of a contractual provision providing for interest, the court cannot assess interest.

Code § 8.01-382 provides, in pertinent part, that:

> [i]n any action at law or suit in equity, the verdict of the jury, or if no jury the judgment or decree of the court, may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence.  The judgment or decree entered shall provide for such interest until such principal sum be paid.  If a judgment or decree be rendered which does not provide for interest, the judgment or decree awarded shall bear interest from its date of entry . . . .

The award of prejudgment interest is a matter committed to the sound discretion of the trier of fact.  See Marks v. Sanzo, 231 Va. 350, 356, 345 S.E.2d 263, 267 (1986) (stating that "whether interest should have been awarded and, if so, from what date interest should run, were matters within the sound discretion of the chancellor"); see also Ragsdale v. Ragsdale, 30 Va. App. 283, 292, 516 S.E.2d 698, 702 (1999).

> "The award of prejudgment interest is to compensate Plaintiff for the loss sustained by not receiving the amount to which he was entitled at the time he was entitled to receive it, and such award is considered necessary to place the [plaintiff] in the position he would have occupied if the party in default had fulfilled his obligated duty."

Marks, 231 Va. at 356, 345 S.E.2d at 267 (quoting Employer-Teamsters Joint Council No. 84 v. Weatherall Concrete, Inc., 468 F. Supp. 1167, 1171 (1979)).

Here, we find no abuse of discretion in the trial court's award of prejudgment interest. As the trial court noted, the separation agreement contemplated that the time share would be marketed and sold much earlier, probably before the mortgage was retired. However, the mortgage payments were paid in full by Pfeiffer before the property was sold. Accordingly, because the separation agreement provided that Walker would reimburse Pfeiffer for the mortgage payments and Pfeiffer has satisfied the debt in full, the award of interest was not an abuse of discretion since it compensated Pfeiffer for the debt from the date incurred. Moreover, the trial court did not abuse its discretion by arbitrarily fixing the date from which the interest should run from January 2, 1996, a date after which Pfeiffer had paid the entire loan.

A court of equity has "discretion . . . over the subject of costs." Code § 17.1-600. "[I]n the exercise of this discretion

- 10 -

the [court] should award costs in favor of the party or parties 'substantially prevailing.'"  McLean v. Hill, 185 Va. 346, 351, 38 S.E.2d 583, 586 (1946) (interpreting former Code § 14.1-177) (citations omitted).  Here, although not finding that Walker was solely responsible for the default, the trial court found that Pfeiffer, who instituted the show cause proceeding, was entitled to reimbursement of the funds expended to pay the mortgage payments.  See Smith v. Woodlawn Constr. Co., 235 Va. 424, 431, 368 S.E.2d 699, 703 (1988) (holding it to be an abuse of discretion if costs are not awarded to the party substantially prevailing below).  Accordingly, we find that the award of costs to Pfeiffer, the party substantially prevailing below, was not an abuse of discretion.

### 3.  Sale of Time Share

Last, Walker argues that the trial court erred in ordering the parties to list the time share for sale at $9,000 or "for such other amount as they may agree which is reasonably calculated to produce a sale."  She contends that the court's order is a modification of the terms of the separation agreement, which unequivocally provided that the parties would list and sell the property only if it sold for at least $9,000.

We find that the phrase "for such other amount as they may agree which is reasonably calculated to produce a sale" contained in the court's order is a modification of the separation

agreement. Although the language of the agreement contemplates that the time share may be sold for less than $9,000 by providing that any shortfall from the sale of the property in which the proceeds do not produce an amount sufficient to pay the mortgage balance be funded by Walker, the trial court erred in ordering the parties to list the property for sale for less than $9,000. But cf. Stanley's Cafeteria, Inc. v. Abramson, 226 Va. 68, 72, 306 S.E.2d 870, 873 (1983) (stating that "[c]ontracting parties may . . . modify the terms of their contract by express mutual agreement"). Therefore, even though the shortfall provision and the parties' correspondence envision that the property may sell for less than the $9,000 listing price, unless the parties mutually agree to modify the terms of the separation agreement which provides that the property is to be listed for $9,000, they cannot be otherwise compelled to do so. See Stanley's Cafeteria, 226 Va. at 73, 306 S.E.2d at 873. Accordingly, we find that the trial court erred by construing the agreement to compel the parties to sell the time share for less than $9,000. Thus, we reverse and vacate that portion of the order that required the parties to list and sell the property "for such other amount as they may agree which is reasonably calculated to produce a sale."

### 4. Reimbursement For Payment of Annual Assessments

In his cross-appeal, Pfeiffer argues that the trial court erred in finding that he was not entitled to reimbursement for the

annual fees paid on the time share. He argues that the annual assessments were part of the "payment of the time share" and because the "save and hold harmless" clause required that he be held harmless for the payments, he was entitled to reimbursement of these expenses.

We find that the "save and hold harmless" clause does not require Walker to reimburse Pfeiffer for the annual assessments paid on the time share. The term "payments" is unambiguous in this case and, according to its plain meaning, the term applies only to the mortgage payments. "When the terms of a disputed provision are clear and definite, it is axiomatic that they are to be applied according to their ordinary meaning." Smith, 3 Va. App. at 514, 351 S.E.2d at 595-96 (citation omitted). In common usage, "payment" is "something that is given to discharge a debt or obligation." Webster's Third New International Dictionary 1659 (1981). The annual assessments include the costs for maintenance, upkeep and cleaning, taxes and insurance, and replacement costs. Thus, because the "save and hold harmless" clause only requires repayment of the advance of monies for the purchase or financing of the time share, which does not encompass the annual assessments, the "save and hold harmless" clause is not applicable to annual assessments.

### 5.  Attorney's Fees

Pfeiffer argues that the trial court erred in denying his request for attorney's fees.  Pfeiffer asserts that Walker's unwillingness to market and sell the time share was willful and unjustified.

A trial court's denial of attorney's fees is reviewed only for abuse of discretion.  See Head v. Head, 24 Va. App. 166, 181, 480 S.E.2d 780, 788 (1997).  Here, the trial court found that Walker was not solely responsible for the default and failure to market and sell the time share.  The trial court noted "[t]he problem is that these people refuse to cooperate to accomplish a task which is mutually beneficial."  We find no abuse of discretion in the trial court's denial of attorney's fees.  Additionally, we deny Pfeiffer's request for attorney's fees on appeal.

### III.  CONCLUSION

In summary, we find the trial court retained jurisdiction to construe and enforce the separation agreement that was ratified and incorporated in its final divorce decree; the separation agreement was unambiguous and obligated Walker to reimburse Pfeiffer for the mortgage payments he made on the time share after the divorce decree was entered; and Pfeiffer was not entitled to reimbursement for the annual assessment fees paid by him for the time share.  Further, we find that the trial court did not err by

- 14 -

denying Pfeiffer's request for attorney's fees or ordering Walker to pay interest on the judgment and to pay costs.  Accordingly, we affirm the trial court's order with respect to those issues. However, we find that the trial court erred by ordering the parties to list the time share for sale "for such other amount as they may agree which is reasonably calculated to produce a sale" and, therefore, we reverse and vacate that portion of the trial court's order.

<u>Affirmed, in part;</u>
<u>reversed and</u>
<u>vacated, in part.</u>